AMERICAN LUMBERMAN'S MUTUAL CASUALTY COMPANY OF ILLINOIS, a corporation, complainant,

*v.*

BRADLEY CONSTRUCTION COMPANY, a corporation, defendant.

[Decided June 18th, 1940.]

*Mr. Newton H. Porter, Jr.,* receiver, *pro se.*

*Mr. Edward R. McGlynn,* for the Orange Valley Bank.

BERRY, V. C.

The petitioner was appointed by this court as receiver of the insolvent defendant corporation. Upon his appointment he took over defendant's bank account in the Orange Valley Bank, in which account there was a small balance. Investigation disclosed that on September 26th, 1939, several months prior to the receiver's appointment, when the defendant company had a bank balance of $1,933.75, the bank charged its account with $1,900, and credited that amount on demand collateral loans due the bank from the defendant. By this proceeding the receiver seeks an order directing the bank to pay to him the sum of $1,900 on the ground that the balance in said bank account at the time of said charge was a trust fund of which the bank had knowledge, and which was not liable for the payment of debts due from the defendant company to the bank. The controversy arises out of the following circumstances:

In December, 1938, the defendant company entered into a contract with the board of education of the town of Springfield, New Jersey, for the construction of a public school building at a cost of approximately $51,000. Monthly pay-

ments on account of the contract price were made by the board of education to the defendant by check of the board on the face of which was a notation that the payment was on account of the contract and the checks were deposited as received in the defendant company's general bank account in the Orange Valley Bank, with the exception of the last check received by the company in September, 1939, which was deposited in another bank. The final payment on account of the contract was made by the board of education to the receiver after his appointment.

On or about December 14th, 1939, about two weeks before the contract was executed, the president of the defendant company with his insurance broker through whom he was arranging for his contractor's bond, conferred with the officials of the bank relative to a line of credit and at this conference the impending school contract was discussed. As a result of that conference the defendant was given a line of credit which ultimately resulted in the discount of demand collateral notes which, on September 26th, 1939, aggregated $9,675.30. The defendant company's account with the Orange Valley Bank was opened on November 26th, 1938, and deposits therein up until September 26th, 1939, the date of the $1,900 charge complained of, were as follows:

| Date of Deposit | Amount of Deposit | Amount of Board of Education Check |
|---|---|---|
| November 26, 1938 | $396.15 | |
| December 3 | 174.85 | |
| December 9 | 25.00 | |
| December 14 | 5,000.00 | |
| December 16 | 225.00 | |
| December 23 | 82.03 | |
| December 30 | 6.19 | |
| January 13, 1939 | 80.00 | |
| January 20 | 1,680.23 | |
| February 3 | 80.00 | |
| February 24 | 1,650.00 | |
| February 10 | 35.00 | |
| xFebruary 16 | 2,732.40 | $2,732.40 |
| February 17 | 1,530.00 | |
| March 3 | 80.00 | |
| March 9 | 2,954.00 | |
| xMarch 11 | 2,080.89 | 2,080.89 |

| Date of Deposit | Amount of Deposit | Amount of Board of Education Check |
|---|---|---|
| March 21 . . . . . . . . . . . . . . | 1,870.90 | |
| March 31 . . . . . . . . . . . . . . | 18.00 | |
| xApril 5 . . . . . . . . . . . . . . . . | 9,283.21 | 9,283.21 |
| April 6 . . . . . . . . . . . . . . . . | 150.78 | |
| xMay 4 . . . . . . . . . . . . . . | 12,473.69 | 11,571.99 |
| May 19 . . . . . . . . . . . . . . . | 3.20 | |
| June 1 . . . . . . . . . . . . . . . | 147.24 | |
| June 8 . . . . . . . . . . . . . . . | 147.44 | |
| xJune 9 . . . . . . . . . . . . . . | 9,767.49 | |
| June 16 . . . . . . . . . . . . . . | 86.00 | |
| June 23 . . . . . . . . . . . . . . | 900.00 | |
| xJuly 6 . . . . . . . . . . . . . . | 5,386.90 | 5,306.90 |
| July 17 . . . . . . . . . . . . . . | 1,200.00 | |
| August 1 . . . . . . . . . . . . . . | 80.00 | |
| xAugust 4 . . . . . . . . . . . . | 7,442.99 | |
| August 23 . . . . . . . . . . . . | 90.72 | |
| September 1 . . . . . . . . . . . | 7.60 | |
| xSeptember 2 . . . . . . . . . . | 4,978.07 | 4,898.07 |
| September 15 . . . . . . . . . | 12.25 | |
| | $72,858.22 | $35,873.46 |

(The deposits marked x were deposits of checks of the board of education of the school district of Springfield on account of defendant's contract for the erection of the public school building.)

From the foregoing statement, it will be seen that the total deposits amounted to $72,858.22. Of this amount $9,674.47 represented loans to the defendant company by the bank of deposit; $35,873.46 represented deposits of checks on account of the school contract, and the balance, amounting to $27,310.29, came from miscellaneous sources. As already stated, all of the checks received by the defendant company on account of the school contract, with the exception of one for $892.35, dated September 21st, 1939, were deposited in this bank. That check was deposited in another bank on September 23d, 1939. An analysis of the defendant's bank account shows that on August 3d, 1939, the balance therein was $601.29. Between that time and the date of the charge complained of, there was deposited in the account the sum of $12,551.63, of which $12,431.06 was made up of two payments on account of the contract with the board of education,

and the balance of $190.57 was for miscellaneous items. This analysis also shows that on September 1st, 1939, the date of the last deposit of a board of education check, one in the amount of $4,898.07, the defendant's balance was $2,030.79.

The defendant company's business was that of a general contractor and during the period from the opening of the bank account to the date of the challenged charge the defendant had one other contract which was for the construction of a Standard Oil station, and this was completed some time before June 1st, 1939. In addition to that the contractor did only some miscellaneous job work. The proceeds of that contract and of the miscellaneous job work were deposited in this account. There is no evidence touching any knowledge by the bank of the Standard Oil contract or the deposit of its proceeds, or of the miscellaneous job work; but the bank knew that the defendant was a general contractor.

It is alleged by the receiver that at the time the challenged charge was made the bank was pressing the defendant for payment on account of its note but without success, and that the bank knew of defendant's precarious financial condition. This is not denied by the bank and the circumstances would seem to confirm its truth. The bank loans to the defendant company were made on collateral considered ample at the time the loans were made, and in the December following the challenged charge, that collateral was sold by the bank for sufficient to pay the balance due on the defendant's notes which the bank held.

There is no dispute as to the general rule that the relation between a bank and its general depositors is that of debtor and creditor, and the bank may set off against a general deposit a debt due it from the depositor (*Tufts* v. *Peoples Bank and Trust Co.*, 59 *N. J. Law 380;* 9 *C. J. S. 614,* ¶ *296*); but this rule does not permit a set-off against trust funds on deposit to the credit of the debtor as trustee. 7 *C. J. 658*. Nor does the rule apply where the moneys in the depositor's general account are held by him in trust and the bank has notice of that fact. *Jeffray* v. *Towar, 63 N. J. Eq. 530*. But the receiver contends that here the bank had knowledge that the funds deposited in defendant's account consisted

mainly of payments on account of the contract between defendant and the board of education, and is charged with knowledge of the statute (*R. S. 2:60-212*) impressing those funds with a trust in favor of laborers and materialmen. The act upon which the receiver relies reads as follows:

"Money Paid to Contractors on Public Works as Trust Fund.

"2:60-212. Money paid to contractor trust fund for payment of claims. All money paid by the State of New Jersey or by any agency, commission or department thereof, or by any county, municipality or school district in the state, to any person pursuant to the provisions of any contract for any public improvement made between any such person and the state or any agency, commission or department thereof, or any county, municipality or school district in the state, shall constitute a trust fund in the hands of such person as such contractor, until all claims for labor, materials and other charges incurred in connection with the performance of such contract shall have been fully paid."

The purpose of this statute was explained in *Stultz-Sickles Co.* v. *Fredburn Construction Co.*, *114 N. J. Eq. 475, 478*, to be to avoid the effect of the decision of this court in *Grover* v. *Board of Education*, *102 N. J. Eq. 415; affirmed, 104 N. J. Eq. 197*, which held that a contractor could use payments on account of public construction contracts for the payment of debts due materialmen on other or prior contracts, and that such materialmen might later compel the contractor's surety to pay their claims on the contracts producing the payments thus misapplied. This decision was based upon the fact that "the moment the money was paid to Stout [the contractor] by the board, it became and was his own money" and the legal right of a debtor owing several debts to one creditor to direct the application of any payment to such creditor to whatever debt he chooses. The act relied upon was, I think, designed to protect the bonding companies as much as the materialmen and laborers. *Cf. Fidelity and Deposit Company of Maryland* v. *McClintic-Marshall Corp.*, *115 N. J. Eq. 470*. It will be observed that there is no penalty imposed upon the contractor by that act (*R. S. 2:20-212*) for the misapplication of funds in his hands, but he would of course, be liable as upon a breach of trust; and under *R. S. 2:124-18* he would be guilty of a misdemeanor. But the

bondsman is not absolved from liability by the contractor's misapplication of the fund. As was said by Vice-Chancellor Buchanan in *Grover* v. *Board of Education, supra,* the bonding company might protect itself from such misapplication as it "might require * * * that the installments of contract price be paid by the municipality to the contractor and the surety jointly, so that the surety could control the application of such moneys." However, we are not immediately concerned with the surety's liability, and the foregoing comment is merely explanatory.

. It is clear, I think, that the receiver's right to the payment demanded depends entirely upon notice to the bank of the alleged trust character of the funds on deposit to the defendant's credit. *Jeffray* v. *Towar, supra; Hadley* v. *Passaic National Bank and Trust Co., 113 N. J. Eq. 548.*

The circumstances which the receiver contends import such notice are as follows:

1. The statute, *R. S. 2:60-212,* with knowledge of which the bank is charged.

2. The bank's alleged knowledge that the defendant was engaged in the performance of a contract for a public work.

3. The bank's alleged knowledge that the greater portion of the deposits was made up of payments on account of that contract.

4. The bank's alleged knowledge that practically all of the deposits in June and later represented such payments.

5. The bank's alleged knowledge that on August 3d, 1939, defendant's bank balance was $601.29, and that between that date and September 26th, 1939, the total deposits by defendant amounted to the sum of $12,531.63 of which $12,341.06 was made up of two payments on account of the school contract.

6. That all of the board of education checks for monthly payments on account of the contract were plainly stamped or marked as payments on account of the construction work.

7. That the condition of the defendant's bank account and the nature of the deposits therein between August 3d and September 15th were such as to put the bank on inquiry as to whether or not the laborers and materialmen having claims

against the contractor for labor and material had been paid; that whatever put the bank on inquiry amounted in law to notice. And it is argued that the bank was obliged to make such inquiry before charging defendant's notes to its account, and not having done so, is liable to the receiver for the amount of the alleged illegal charge.

This sounds like a dangerous doctrine. Such a rule of law would necessitate every bank having contractors amongst its depositors making constant and repeated inquiries and check-ups upon every contractor's bank account to determine the source of the deposits and the status of the depositor's public contracts with respect to amounts due laborers and materialmen before permitting any withdrawals therefrom. Nothing less than a complete supervision of the contract would suffice. In the case of a contractor having several large contracts for public works, the task of such supervision would be so burdensome that the bank would undoubtedly lose money by handling the deposit. The result would be that contractors performing large public works contracts would have difficulty in finding banks willing to accept their deposits, and they might thus be deprived of all banking facilities. I think the legislature never intended to cast such a burden upon depository banks. Where a contractor mingles deposits of payments on account of public contracts with deposits of other funds, no such financial supervision of such contracts should be required of the bank of deposit to determine if the contractor has paid materialmen and laborers on public works. It will be noted that the defendant's bank account was a general and not a trust account. The alleged notice of the character of the deposits in that account is based entirely upon inference and surmise and there is no evidence of any actual notice to any responsible officer of the bank, or that any such officer ever saw the board of education checks, knew of their amount or when they were deposited. It is quite probable that no one connected with the bank, except the receiving teller, ever saw the checks. But be that as it may, the account being a general and not a trust account, it is conceived that if the contractor had immediately checked out the monthly contract payments to creditors on other jobs the bank could

not have refused to honor the checks; and the bonding company would still be liable for claims of laborers and materialmen on the particular job for which the monthly payment was made. So long as the bank must permit the contractor-depositor to draw on such deposits for his own purposes at will, the bank's right of set-off against that account is not impaired. The intent of the legislature, I believe, was to charge payments on account of contracts for public works with a trust in favor of laborers and materialmen only so long as such payments remained in the contractor's hands—and that is the language of the statute—*R. S. 2:60-212*. Once such payments are mingled with other funds of the contractor in his general bank account, they are, as to third parties, free from such trust, unless such third parties have notice thereof. So long as the bank had no notice to the contrary it would have the right to assume that the contractor was committing no breach of trust in drawing checks against his general bank account (*9 C. J. S. 714-353*); and it could not refuse payment of such checks without notice of their fraudulent character. This is so even if the checks were drawn to the bank's order in payment of a debt due from the depositor. *9 C. J. S. 714*. See *New Amsterdam Casualty Co.* v. *National Newark and Essex Banking Co., 117 N. J. Eq. 264; affirmed, 119 N. J. Eq. 540*.

In my judgment, the circumstances of this case do not spell out notice to the bank that the balance in defendant's bank account was a trust fund.

While perhaps not controlling on the issue here involved, the form of collateral note used in connection with the bank's loans to the defendant company which was offered in evidence in this proceeding, expressly authorized the bank to apply moneys on deposit to the credit of the maker to the payment of the debt evidenced by the note; and there is evidence that there was specific authorization by the defendant to the bank for the $1,900 charge against its account; or at least acquiescence therein. The bank not being charged with notice, its authority for the challenged charge was complete. *Hanford* v. *Duchastel, 87 N. J. Law 205; Hadley* v. *Passaic National Bank and Trust Co., supra*.

The prayer of the receiver's petition is denied.