**In re GAMEST, INC., Debtor.**

**Thomas F. MILLER, as Trustee for the Bankruptcy Estate of Gamest, Inc., Plaintiff,**

**v.**

**RAUSCH–ALAN, INC., Ridgedale State Bank, Simcor, Inc., Michael Blake, James Welbourn, and Michael Ferguson, Defendants.**

**Bankruptcy No. 4–89–5293.**
**Adv. No. 4–90–288.**

United States Bankruptcy Court,
D. Minnesota.

July 9, 1991.

T. Chris Stewart, Dunkley, Bennett & Christensen, P.A., Minneapolis, Minn., for plaintiff.

Douglas B. Greenswag, Allen I. Saeks, Leonard, Street and Deinard, Minneapolis, Minn., for Ridgedale State Bank & Simcor.

William J. Joanis, Hart, Bruner & O'Brien, Minneapolis, Minn., for Rausch–Alan, Inc.

MEMORANDUM ORDER GRANTING MOTION OF RIDGEDALE STATE BANK AND SIMCOR, INC. FOR SUMMARY JUDGMENT

NANCY C. DREHER, Bankruptcy Judge.

The above-entitled matter came on for hearing before the undersigned on the 17th day of June, 1991 on cross-motions for summary judgment in this proceeding to avoid allegedly preferential transfers under 11 U.S.C. § 547(b). The appearances were as follows: T. Chris Stewart for the Plaintiff; Douglas Greenswag for Ridgedale State Bank (the "Bank") and Simcor, Inc. ("Simcor"); and William Joanis for Rausch–Alan, Inc. This Court has jurisdiction over the parties to and the subject matter of this proceeding pursuant to 28 U.S.C. §§ 157 and 1334, and Local Rule 103. Moreover, this Court may hear and finally adjudicate these motions because their subject matters render such adjudication a "core" proceeding pursuant to 28 U.S.C. § 157(b)(2)(F). This Memorandum Order shall constitute the Court's findings of fact and conclusions of law.[1]

### UNDISPUTED FACTS

The Debtor was in the business of selling games and related merchandise on a wholesale and retail basis. Beginning on April 10, 1985, the Bank began advancing operating capital to the Debtor. The line of credit was secured by a first priority security interest in all of the Debtor's inventory, accounts receivable and leasehold improvements.

In the fall of 1988, the Bank informed the Debtor that it intended to close the line of credit. On November 22, 1988, Simcor and the Debtor entered into a credit agreement whereby Simcor would provide a line of credit based on a percentage of the Debtor's accounts receivable. The line of credit was secured by a security interest in all of the Debtor's accounts receivable, inventory, equipment and general intangibles. On the same date, Simcor and the

Bank entered into an agreement whereby the Bank's first priority security interest in the Debtor's receivables was subordinated to Simcor's interest in the same.

James Welbourn and John Shepard (the "Guarantors"), who were "insiders" of the Debtor, guaranteed repayment of the Bank's and Simcor's lines of credit. The Bank and Simcor, however, were not "insiders" of the Debtor.

Following execution of the agreements among the Debtor, the Bank and Simcor, the Debtor dramatically reduced its indebtedness to the Bank and Simcor. On October 31, 1989, an involuntary petition for relief under Chapter 7 of the Code was filed against the Debtor. The Plaintiff was appointed interim trustee. This Court entered an order for relief on December 7, 1989, after the time to answer had expired.

At all times during the year preceding the filing of the involuntary petition, the liquidation value of the collateral securing the lines of credit exceeded the amounts of outstanding indebtedness.

### DISCUSSION

Bankruptcy Rule 7056 incorporates Rule 56 of the Federal Rules of Civil Procedure:

The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed.R.Civ.P. 56(c). The Bank and Simcor assert that because their claims were fully secured throughout the year preceding the filing of the petition, the transfers to them during that period are not avoidable, even if this Court were to adopt the holding of cases such as *Levit v. Ingersoll Rand Fin. Corp.*, 874 F.2d 1186 (7th Cir.1989) (also known as the *"Deprizio"* decision) and *Manufacturers Hanover Leasing Corp. v. Lowrey (In re Robinson Bros. Drilling,*

---

**1.** The Court bases its findings of fact and conclusions of law upon the pleadings, stipulation of facts, affidavits and memoranda filed by the parties, as well as the argument of counsel presented during the motion hearing.

*Inc.)*, 892 F.2d 850 (10th Cir.1989) *(per curiam), adopting Lowrey v. First Nat'l Bank (In re Robinson Bros. Drilling, Inc.)*, 97 B.R. 77 (W.D.Okla.1988). If the Bank and Simcor are correct, all issues of fact pertaining to the Plaintiff's claim against them will be immaterial and they will be entitled to judgment as a matter of law, and therefore summary judgment in their favor will be appropriate. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986), *reh'g denied*, 480 U.S. 903, 107 S.Ct. 1343, 94 L.Ed.2d 515 (1987).

The *Deprizio* court held that an avoidable preferential transfer which occurred within one year prior to the filing of the petition may be recovered from a non-insider transferee if the antecedent debt was guaranteed by an insider who benefitted from the transfer. The court held that a guarantor has a contingent claim against the debtor, and therefore the guarantor is a "creditor" for purposes of determining whether a transfer was preferential under 11 U.S.C. § 547(b). *Levit*, 874 F.2d at 1190. If the guarantor was an "insider", the one-year reach-back provision of 11 U.S.C. § 547(b)(4)(B) applies. Once the trustee has established that a transfer meets all the criteria for avoidance under 11 U.S.C. § 547(b), the trustee may recover the property transferred or the value thereof from the "initial transferee" under 11 U.S.C. § 550(a)(1), even if the initial transferee was not the "insider" that caused the one-year reach-back to apply, unless the initial transferee establishes a defense under 11 U.S.C. § 547(c).[2] *Id.*

The Bank and Simcor assert that the transfers to them during the year preceding the filing of the petition do not meet two of the criteria for avoidance under section 547(b), and therefore the issue decided in the *Deprizio* case need not be reached:

Except as provided in subsection (c) of this section, the trustee may avoid any transfer of an interest of the debtor in property—

    (1) to or for the benefit of a creditor;

    .    .    .    .    .

    (5) that enables such creditor to receive more than such creditor would receive if—

    (A) the case were a case under chapter 7 of this title;

    (B) the transfer had not been made; and

    (C) such creditor received payment of such debt to the extent provided by the provisions of this title.

11 U.S.C. § 547(b). They base their assertion on dicta in the *Deprizio* decision:

First, if the creditor was fully secured, then payment does not produce a benefit for the inside guarantor, whose exposure was zero. The preference-recovery period therefore would be only 90 days. Second, under § 547(b)(5) a transfer is avoidable only to the extent the creditor received more than it would have in a Chapter 7 liquidation. A fully-secured creditor will be paid in full under Chapter 7, so there is no avoidable preference in this case with or without a guarantee by an insider.

*Levit*, 874 F.2d at 1199–1200.

Commentators have endorsed the dicta in *Deprizio* regarding the lack of "benefit" to a guarantor of a fully-secured claim:

Section 547 does not define what sort of "benefit" needs to be received by a creditor to trigger preference liability. If the insider is only a guarantor of a fully secured loan, it is difficult to see how the insider has economically benefited from the payment to the lender. Technically, the guarantor has "benefitted" via a reduction in his exposure on

---

**2.** A number of recent decisions have held that section 550(a)(1) should not be interpreted to permit recovery from non-insiders for avoidable transfers made during the extended preference period for insiders. *See, e.g., Performance Commun., Inc. v. First Nat'l Bank (In re Performance Commun., Inc.)*, 126 B.R. 473 (Bkrtcy.W.D.Pa. 1991); *Official Creditor's Comm. of Arundel*

*Hous. Components, Inc. v. Georgia–Pacific Corp. (In re Arundel Hous. Components, Inc.)*, 126 B.R. 216 (Bkrtcy.D.Md.1991); *Rubin Bros. Footwear, Inc. v. Chemical Bank (In re Rubin Bros. Footwear, Inc.)*, 119 B.R. 416 (S.D.N.Y.1990). Those decisions declined to follow the holdings of the *Deprizio* and *Robinson Brothers Drilling* cases.

the guarantee. From a practical standpoint there is no benefit because the insider ultimately should have no exposure on the guarantee, assuming that the collateral still exists and does not decline in value. On the other hand, it could be argued that the benefit here is really an issue of timing rather than the amount of money. From the standpoint of the lender, or the guarantor who would be subrogated to claims of a fully paid lender, it is surely a "benefit" to be fully paid prior to bankruptcy rather than to hold a fully secured claim in the bankruptcy proceedings. This probably is not the type of "benefit" envisioned by the Code, however.

Godshall, Pettigrew, Musselman & Brooke, *Two Years Later: Eight Questions Left Unanswered (or Extremely Confused) by Deprizio*, 19 Cal.Bankr.J. 41, 61 (1991) [hereinafter *Two Years Later*].

I am persuaded that the transfers to the Bank and Simcor did not afford the Guarantors the kind of "benefit" necessary to meet the requirement for avoidability provided in section 547(b)(1). If the transfers had not been made, the Bank and Simcor could have (1) realized payment of their claims from the collateral, in which event the guaranties would be extinguished, or (2) recovered from the Guarantors, in which event the Guarantors would have become subrogated to the Bank's and Simcor's fully-secured claims.[3] In either event, the Guarantor's liability would have been extinguished without suffering an economic loss, which is the same outcome the Guarantors enjoyed as a result of the transfers. Therefore, the Guarantors did not benefit from the transfers, and consequently the transfers are not avoidable. 11 U.S.C. § 547(b)(1).

The same commentators, however, have criticized the dicta in *Deprizio* regarding whether an insider guarantor improves its economic position compared with what it would receive in a Chapter 7 liquidation when a fully-secured claim is paid down:

*C–L Cartage* is also notable for its analysis that the "creditor" contemplated in section 547 must be the same one throughout sections 547(b)(1), (b)(4) and (b)(5). In holding that the defenses of section 547(b)(5) refer to the insider rather than the outside creditor, this casts doubt on the *Deprizio* dicta that fully secured outside creditors need not worry about extended preference liability. In effect, *C–L Cartage* stands for the proposition that the level of collateral held by the outside creditor is irrelevant, because the courts will look only to how the *inside guarantor* would fare in a chapter 7 liquidation.

*Two Years Later*, *supra*, at 53 (original emphasis) (referring to *Ray v. City Bank & Trust Co. (In re C–L Cartage Co.)*, 899 F.2d 1490 (6th Cir.1990)).

I agree that in order for the one-year reach-back provision to apply, the "creditor" referred to in sections 547(b)(1) and (b)(5) must be equated with the "insider" referred to in section 547(b)(4)(B). *Ray*, 899 F.2d at 1493. That does not, however, cause the fully-secured status of the outside creditor's claim to be irrelevant. If the transfers had not been made and the Bank and Simcor had received payment instead from the Guarantors, the Guarantors would have been subrogated to the rights of the Bank and Simcor. Under such a scenario, the Guarantors would have been fully-secured creditors in a Chapter 7 case:

Second, under § 547(b)(5) a transfer is avoidable only to the extent the creditor [*i.e.*, the inside guarantor] received more than it would have in a Chapter 7 liquidation. A fully-secured creditor [*i.e.*, the inside guarantor asserting right of subrogation] will be paid in full under Chapter 7, so there is no avoidable preference in this case with or without a guarantee by an insider.

*Levit*, 874 F.2d at 1199–1200. The same would be true if the transfers had not been

---

**3.** If the Guarantors had paid the Bank's and Simcor's claims in full after the petition was filed, the Guarantors could have asserted rights of subrogation to the rights of the Bank and Simcor under 11 U.S.C. § 509(a), even if the Bank and Simcor subsequently released their security interests without assigning them to the Guarantors.

made and the Bank and Simcor realized payment of their claims from the collateral. In either event, the Guarantor's liability on the guaranties would have been extinguished without suffering an economic loss from the Chapter 7 case, which is the same outcome the Guarantors enjoyed as a result of the transfers. Consequently, the transfers are not avoidable. 11 U.S.C. § 547(b)(5).

### CONCLUSION

Because I have concluded that the transfers are not avoidable pursuant to 11 U.S.C. §§ 547(b)(1) and (b)(5), I need not decide whether the transferred property or the value thereof could have been recovered from the Bank and Simcor under 11 U.S.C. § 550(a). Moreover, since I have concluded that the Bank and Simcor are entitled to judgment as a matter of law, I must deny the Plaintiff's motion for summary judgment.

ACCORDINGLY, IT IS HEREBY ORDERED:

1. The motion of Ridgedale State Bank and Simcor, Inc. for summary judgment is granted;

2. The Plaintiff's motion for summary judgment is denied;

3. Ridgedale State Bank and Simcor, Inc. shall have judgment dismissing with prejudice on the merits all claims asserted against them by the Plaintiff in the First Amended Complaint filed in this proceeding; and

4. Such judgment shall be entered forthwith, since there is no just reason for delaying the entry of the judgment pursuant to Bankruptcy Rule 7054(a), which incorporates Rule 54(b) of the Federal Rules of Civil Procedure.

LET JUDGMENT BE ENTERED ACCORDINGLY.