In re **PINEVIEW CARE CENTER, INC., Debtor.**

**James J. CAIN, Trustee of Pineview Care Center, Inc., Plaintiff,**

v.

**Baruch MAPPA and United Jersey Bank/ South, N.A., successor in interest to Lenape State Bank, Defendants.**

Bankruptcy No. 89–00292 (RG).
Adv. No. 90–1289.

United States Bankruptcy Court, D. New Jersey.

April 24, 1992.

---

Wizmur, Neuner and Ventura by Steven R. Neuner, Marlton, N.J., for James J. Cain, trustee.

Drinker Biddle & Reath by Joseph F. Riga, Warren T. Pratt, Princeton, N.J., for United Jersey Bank/South, N.A.

Friedman Siegelbaum by Joel R. Glucksman, Roseland, N.J., for Baruch Mappa.

## OPINION

ROSEMARY GAMBARDELLA, Bankruptcy Judge.

This matter comes before the Court on the motion and cross-motion of United Jersey Bank/South, N.A. and Baruch Mappa respectively (hereinafter "UJB/S" and "Mappa"), for summary judgment in favor of UJB/S and Mappa in the adversary proceeding filed by James J. Cain (the "Trustee") against UJB/S and Baruch Mappa seeking to recover payments as prefer-

ential transfers. A hearing was conducted on November 19, 1991. The following constitutes this Court's findings of fact and conclusions of law.

## FACTS

On June 9, 1987 United Jersey Bank/South, N.A. made a $300,000 demand loan (the "loan") to Pineview Care Center, Inc. (the "debtor"). The loan was secured by, *inter alia,* a guaranty of Baruch Mappa ("Mappa"), a shareholder of the debtor.

On April 8, 1988, May 16, 1988, and June 29, 1988, the outstanding loan obligation was satisfied when UJB/S received three principal payments in the amounts of $47,-545.84 (the "First Payment"),[1] $125,000.00 (the "Second Payment") and $127,454.16[2] (the "Third Payment") respectively. The first payment was in the form of a check, drawn on the debtor's business checking account, Account No. 007030836 (the "Account"). The Second and Third Payments were effectuated by setoff of funds in that same said Account. (Plaintiff's application in support of Motion for Summary Judgment dated September 26, 1991 at pages 1–2).

On January 13, 1989, four of the debtor's creditors filed an involuntary bankruptcy petition (the "petition") with the United States Bankruptcy Court for the District of New Jersey. On March 22, 1989, this Court entered an Order for Relief.

On November 21, 1990, the Chapter 7 Trustee, James J. Cain, through counsel, filed an adversary action against UJB/S and Mappa seeking to recover the payments as preferences pursuant to § 547(a) of the Bankruptcy Code.

The Complaint alleges that Mappa was the chief executive officer, a shareholder of the debtor, and an "insider" within the meaning of 11 U.S.C. § 101.

The Complaint further alleges that on or about December 22, 1986, the debtor took a loan from Lenape State Bank, that Mappa guaranteed this loan, and that UJB/S is the successor in interest to Lenape.

The Complaint alleges that on or within one year before the date of filing of the Bankruptcy Petition, a total of $324,545.84 was transferred to Lenape and/or UJB/S; $47,545.84 in April, 1988, $125,000.00 in May, 1988, and $152,000.000 in June, 1988.[3]

The Complaint alleges that these payments were on account of the loan guaranteed by Mappa, which was an antecedent debt. The Complaint alleges that the debtor was insolvent at the time of the transfers. The Complaint alleges that the transfers enabled UJB/S and Mappa, as guarantor of the debtor, to receive more than they would have received in a proceeding under Chapter 7 of the Bankruptcy Code, had the transfers not been made.

The plaintiff demands judgment against the defendants in the form of avoidance of the three transfers pursuant to U.S.C. § 547(a), or entry of judgment in favor of the plaintiff against the defendants, jointly and severally plus interest and costs.

On February 4, 1991, UJB/S filed an answer to the trustee's complaint in which UJB/S stated that the amount and dates of repayment were: $47,545.84 on April 8, 1988; $125,000.00 on May 16, 1988; and $127,454.16 on June 29, 1988.

In its answer, UJB/S set forth five affirmative defenses. The first affirmative defense alleges that all payments were contemporaneous exchanges for new value. The second affirmative defense alleges that the first payment on April 8, 1988 of $47,-545.84 was a payment of a debt incurred by the debtor in the ordinary course of business or financial affairs of the debtor and UJB/S. The third affirmative defense alleges that UJB/S was, at all relevant times, a secured creditor to the extent of all payments alleged in the complaint. The fourth affirmative defense alleges that to the extent that UJB/S received funds of the debt-

---

**1.** The actual amount of the First Payment was $50,000.00, representing $47,545.84 in principal and the balance in interest.

**2.** The actual amount of the Third Payment was $129,815.85, representing $127,454.16 in principal and the balance in interest.

**3.** At the hearing on these motions, the parties appeared to agree that the third and final payment made on June 29, 1988, constituting the remaining balance of principal and interest on the loan was in the total amount of $129,815.85.

or within one year of, but more than 90 days before the debtor's bankruptcy, these funds were the result of UJB/S's valid exercise of its right to offset the mutual debt owed by UJB/S to the debtor against the claim of UJB/S against the debtor and that this mutual debt arose before the commencement of this bankruptcy. The fifth affirmative defense alleges that any transfers subject to avoidance are recoverable only from Mappa and not from UJB/S.

Also included in UJB/S's answer is a cross-claim against Baruch Mappa, alleging that if UJB/S is required to disgorge payments, then Mappa is obligated to UJB/S in the amount of the disgorged payments pursuant to the guarantee agreement.

On February 28, 1991, Baruch Mappa, filed an amended answer to UJB/S's complaint. Mappa admitted that he was a shareholder of the debtor but denied that he was the chief executive officer or an insider of the debtor.

Mappa alleged three affirmative defenses to the complaint. The first affirmative defense alleges that plaintiff's complaint fails to state a claim upon which relief may be granted. The second affirmative defense alleges that the plaintiff may not avoid the alleged transfers by 11 U.S.C. § 547(c). The third affirmative defense alleges that any transfers that the Court deems avoidable are recoverable only from UJB/S, and not from Mappa.

Mappa answered UJB/S's crossclaim. Mappa therein admitted that he had signed a guaranty, but denied having knowledge or information to form a belief as to whether the guaranty covered the alleged preferential payment.

Mappa asserted a crossclaim against UJB/S. Mappa alleges that UJB/S was paid in full on June 30, 1988, by Pineview, thereby releasing Mappa's personal guaranty. Mappa further alleges that since Pineview made the payments to UJB/S, if the trustee prevails against Mappa, requiring him to disgorge the payments, UJB/S is obligated to Mappa for the amount of the disgorged payments.

On September 27, 1991 UJB/S filed this motion for summary judgment. UJB/S argues that, as a matter of law, the Trustee cannot recover the said payments unless the Court adopts the *Deprizio* theory of insider recovery. In the alternative, UBJ/S asserts that, as a matter of law, the Trustee cannot avoid the three payments because UJB/S was fully secured and did not receive more than it would have in a Chapter 7 liquidation proceeding and because two of the payments were effectuated by valid setoffs pursuant to § 553.

Mappa has also cross-moved for summary judgment in his favor. Mappa asserts that the Trustee argues that the transfers were preferential from Mappa, who had guaranteed the Debtor's debt to UJB/S, because they decreased Mappa's contingent subrogation claim against the Debtor. Mappa here moves for summary judgment in his favor arguing that the transfers were not preferential because the transfers from the Debtor to UJB/S were fully secured so that Mappa and UJB/S would have received the same amount in liquidation.

## DISCUSSION

The trustee seeks to avoid this transfer under 11 U.S.C. § 547(b). Section 547(b) incorporates a number of elements that must be established before a transfer can be avoided as preferential. Section 547(b) provides:

(b) Except as provided in subsection (c) of this section, the trustee may avoid any transfer of an interest of the debtor in property—

(1) to or for the benefit of a creditor;

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent;

(4) made—

(A) on or within 90 days before the date of the filing of the petition; or

(B) between 90 days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and

(5) that enables such creditor to receive more than such creditor would receive if—

(A) the case were a case under Chapter 7 of this title;

(B) the transfer had not been made; and

(C) such creditor received payment of such debt to the extent provided by the provision of this title.

11 U.S.C.A. § 547(b).

In addition, § 547(f) creates a presumption of insolvency. The section provides:

(f) for purposes of this section, the debtor is presumed to have been insolvent on and during the 90 days immediately proceeding the date of the filing of the petition.

11 U.S.C.A. § 547(f).

The Trustee relies on § 547(b)(4)(B), the extended one year preference period for insiders, to recover the alleged preferences because the payments occurred more than ninety days before, but within a year of the filing of the debtor's bankruptcy petition.

A transfer can be recovered by a trustee as preferential if it occurs within the ninety days preceding the filing of a debtor's bankruptcy petition and the other elements of § 547 are met. 11 U.S.C. § 547(b). In the case of a transfer to one of the debtor's insiders, the preference period is extended from ninety days to one year before the filing of the petition. *See* § 547(b)(4)(B).

Although a lending institution is seldom an insider of the debtor, and therefore, it is not often the recipient of a preferential transfer occurring outside of the ninety day period, the *Deprizio* theory has put lenders whose loans are guaranteed by insiders at risk throughout the year long preference period. *See Louis W. Levit, Trustee of V.N. Deprizio Construction Co. v. Ingersoll Rand Financial Corporation,* 874 F.2d 1186 (7th Cir.1989).

In a typical *Deprizio* scenario, a lending institution has made a loan to a debtor which is guaranteed by one of the debtor's insiders. The debtor makes loan payments before the ninety day period, but during the one year period prior to the filing of a petition for bankruptcy. Because the insider guarantor would have to pay the lending institution if the debtor defaulted and would have an action against the debtor for indemnification, the loan payment by the debtor, it is argued, was transferred "for the benefit" of the insider "creditor" on account of an antecedent debt within the insider preference period. *See generally, Id.* Thus, if the debtor was insolvent at the time of the transfer, and if the transfers allowed the insider to receive more than it would have in a Chapter 7 proceeding, then a recoverable preference has occurred.

The *Deprizio* theory uses § 550 of the Code to recover the alleged preference to the insider guarantor from the non-insider lending institution. § 550 provides in relevant part:

[T]o the extent that a transfer is avoided under section ... 547 ... of this title, the trustee may recover, for the benefit of the estate, the property transferred or, if the court so orders, the value of such property, from ... the initial transferee of such transfer or the entity for whose benefit such transfer was made....

Pineview made payments to UJB/S over 90 days and less than a year before the filing of the bankruptcy for a debt that was guaranteed by Mappa, a shareholder. The defendant, Mappa, denies that he was an officer and insider of Pineview Care in his answer to the complaint. For the purposes of its motion, UJB/S has asked the Court to assume that Mappa is an insider as that term is defined under § 101(31) of the Bankruptcy Code.[4]

The first issue the Court must determine is whether the trustee may recover the payments from UJB/S, the non-insider creditor, on the basis that it received an insider preference.

---

4. Section 101(31) of the Code provides in relevant part:

(31) "insider" includes—

(B) if the debtor is a corporation—

(i) director of the debtor;

(ii) officer of the debtor;

(iii) person in control of the debtor;

(iv) partnership in which the debtor is a general partner;

(v) general partner of the debtor; or

(vi) relative of a general partner, director, officer, or person in control of the debtor.

Some courts have allowed the trustee to recover against the non-insider lender. *See Levit v. Ingersoll Rand Financial Corp.*, 874 F.2d 1186 (7th Cir.1989); *In re Robinson Bros. Drilling, Inc.*, 892 F.2d 850 (10th Cir.1989); *In re C–L Cartage Co.*, 899 F.2d 1490 (6th Cir.1990); *In re Coastal Petroleum Corp.*, 91 B.R. 35 (Bankr.N.D.Ohio 1988); *In re Big Three Transp., Inc.*, 41 B.R. 16 (Bankr.W.D.Ark.1983).

Other courts, however, have not allowed such recovery. *See In re Midwestern Companies, Inc.*, 102 B.R. 169 (Bankr. W.D.Mo.1989); *In re Aerco Metals, Inc.*, 60 B.R. 77 (Bankr.N.D.Tex.1985); *In re Marketing Resources Int'l. Corp.*, 41 B.R. 575 (Bankr.E.D.Pa.1984), *mod'fd, in part*, 41 B.R. 580 (Bankr.E.D.Pa.1984).

UJB/S argues that the *Deprizio* case conflicts with congressional intent as well as sound business practice. (*See* Plaintiff's Brief in Support of its Motion for Summary Judgment dated September 1991 at p. 8) (hereinafter "Plaintiff's brief at p. ——").

UJB/S asserts that *Deprizio* and its progeny are incorrectly decided and claims that a majority of the courts do not follow *Deprizio*. *Id.* at 19, citing *In re Performance Communications, Inc.*, 126 B.R. 473, 475 (Bankr.W.D.Pa.1991). UJB/S urges this Court to refrain from using § 550 to expand the preference liability of a non-insider beyond that dictated by § 547. (*See* Plaintiff's brief at pp. 19–25 for policy arguments against adopting *Deprizio* ).

The Trustee argues that the Court should adopt the reasoning of *Deprizio*. The Trustee asserts that *Deprizio* and its progeny serve one of the most overriding policy goals of the Bankruptcy Code— equality of treatment among creditors. (*See* Defendant's brief in opposition to motion for summary judgment dated October 28, 1991 at p. 17.) (hereinafter "Defendant's brief at p. ——."). The Trustee also argues that § 550 is clear on its face and that *Deprizio* is not a broad departure from that language. The Trustee asserts that there is no inequity in avoiding the preference because UJB/S has recourse to guarantors which other creditors do not. *Id.*

Assuming that the Court adopts *Deprizio*, UJB/S argues that the Court should nontheless rule in its favor as a matter of law because the second and third payments were effectuated by setoff and that § 553 excludes every other section of the Code from affecting the setoff of mutual prepetition debts.

Bankruptcy Code § 553 provides:

(a) Except as otherwise provided in this section and in sections 362 and 363 of this title, this title does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case under this title against a claim of such creditor against the debtor that arose before the commencement of the case, except to the extent that—

(1) the claim of such creditor against the debtor is disallowed other than under section (502(b)(3) of this title;

(2) such claim was transferred, by an entity other than the debtor, to such creditor—

(A) after the commencement of the case; or

(B)(i) after 90 days before the date of the filing of the petition;

(ii) while the debtor was insolvent; or

(3) the debt owed to the debtor by such creditor was incurred by such creditor—

(A) after 90 days before the date of the filing of the petition:

(B) while the debtor was insolvent: and

(C) for the purpose of obtaining a right of setoff against the debtor.

(b)(1) Except with respect to a setoff of a kind described in section 362(b)(6), 362(b)(7), 365(h)(2) or 365(i)(2), of this title, if a creditor offsets a mutual debt owing to the debtor against a claim against the debtor on or within 90 days before the date of the filing of the petition, then the trustee may recover from such creditor the amount so offset to the extent that any insufficiency on the date of such setoff is less than the insufficiency on the later of—

(A) 90 days before the date of the filing of the petition; and

(B) the first date during the 90 days immediately preceding the date of the filing of the petition on which there is an insufficiency.

(2) In this subsection, "insufficiency" means amount, if any, by which a claim against the debtor exceeds a mutual debt owing to the debtor by the holder of such claim.

(c) For the purposes of this section, the debtor is presumed to have been insolvent on and during the 90 days immediately preceding the date of the filing of the petition.

By the express terms of § 553, the right of setoff is limited by the automatic stay provisions of § 362. *See United States on Behalf of I.R.S. v. Norton*, 717 F.2d 767, 777 (3d Cir.1983).

The funds deposited by Pineview Care with UJB/S in the debtor's Account prior to the filing of the bankruptcy petition became property of the Bank and the debtor became a creditor of the Bank for the amount of the deposit. *See American Lumberman's Mutual Casualty Co. v. Bradley Construction Co.*, 127 N.J.Eq. 500, 13 A.2d 783 (Ch.Div.1940), *aff'd* 129 N.J.Eq. 278, 19 A.2d 242 (Ct. E & A 1941); *Federal Deposit Insurance Corporation v. Pioneer State Bank*, 155 N.J.Super. 381, 389, 382 A.2d 958 (Law Div.1977).

■ The threshold issue which the Court must examine in any request for a setoff is whether there is mutuality of obligation between the debtor and the creditor. The debt and the claim need not rise out of the same transaction since the test is mutuality, not similarity, of obligation. The debt and claim is not required to be of the same character before the principle of setoff may be applied. Pre-petition obligations may be setoff one against the other. There also exists authority for the concept of setoff to apply to mutual post-petition obligations. A post-petition obligation, however, may not be setoff against a pre-petition obligation of the debtor, because there is no mutuality of obligation. *In re Hill*, 19 B.R. 375, 380 (Bankr. N.D.Tex.1982).

■ Section 553 of the Bankruptcy Code which permits the setoff of mutual debts and credits between a debtor estate and its creditors, is merely a statutory recognition of the common law principle of setoff. Courts may look to state law in order to determine whether a setoff has occurred. *See United States on Behalf of IRS*, 717 F.2d at 772. The granting or denial of the right to a setoff, however, depends wholly upon the terms of § 553, and not upon the terms of state laws or statutes. *See, e.g., McCollum v. Hamilton National Bank*, 303 U.S. 245, 248, 58 S.Ct. 568, 570–71, 82 L.Ed. 819 (1938); *Matter of Van Dyk Research Corp.*, 13 B.R. 487, 494–95 (Bankr. D.N.J.1981). It is therefore, useful to examine New Jersey case law on the issue of setoff.

In *Hudson United Bank v. House of Supreme, Inc.*, 149 N.J.Super. 153, 373 A.2d 438 (Ch.Div.1977), judgment was entered for Hudson United Bank ("Bank") against the House of Supreme, Inc. in state court for $784,529.00. The court determined that the defendant was insolvent and appointed a receiver pursuant to N.J.S.A. 14A:14–2. The bank made a motion to permit setoff of this judgment against various accounts of the defendant which were held in the bank pursuant to N.J.S.A. 14A:14–8. The receiver asserted that with the exception of the checking account, all of the defendant's accounts were "special deposits" and must be returned to the receiver. The court noted:

The general rule is that a bank has a right of setoff against all monies or funds in its possession belonging to a depositor to secure the payment of the depositor's indebtedness to the bank [citations omitted]. However, the weight of authority on the issue of setoff by banks recognizes a distinction between general deposits and special deposits. This distinction arises as an exception to the general rule as a condition precedent to the accrual of the right of setoff in that before the fund can be setoff it must have been deposited without re-

strictions and not have been a special fund.

*Id.* at 156–57, 373 A.2d 438.

The Third Circuit in the case of *Matter of Bevill, Bresler & Schulman Asset Management Corp.*, 896 F.2d 54, 57 (3d Cir.1990) noted:

> Section 533 incorporates and preserves in bankruptcy law the right of setoff available at common law. *United States v. Norton*, 717 F.2d 767, 772 (3d Cir. 1983). The equitable right of setoff has long been recognized in bankruptcy, *e.g., Libby v. Hopkins*, 104 U.S. 303, 26 L.Ed. 769 (1881). The rule allows parties that owe mutual debts to state the accounts between them, subtract one from the other and pay only the balance. The rule is grounded on the absurdity of "making A pay B when B owes A." *Studley v. Boylston Nat'l Bank*, 229 US. 523, 528, 33 S.Ct. 806, 808, 57 L.Ed. 1313 (1913). However, setoff is at odds with a fundamental policy of bankruptcy, equality among creditors, because it "permits a creditor to obtain full satisfaction of a claim by extinguishing an equal amount of the creditor's obligation to the debtor, i.e., in effect, the creditor receives a 'preference'." *In re Braniff Airways, Inc.*, 42 B.R. 443, 448 (Bankr.N.D.Tex. 1984). The provision is permissive rather than mandatory, and cannot be invoked in a case where the general principles of setoff would not justify it. *United States v. Norton*, 717 F.2d at 772; *cf. Cumberland Glass Mfg. Co. v. DeWitt*, 237 U.S. 447, 455, 35 S.Ct. 636, 639, 59 L.Ed. 1042 (1915) (construing section 68(a) of the Bankruptcy Act of 1898, the predecessor to section 553).

*Id.* at 57.

■ When a setoff right is being asserted, § 553 rather than § 547 governs the creditor's rights. *See Lee v. Schweiker*, 739 F.2d 870, 873 (3d Cir.1984), *citing, F.D.I.C. v. Bank of America*, 701 F.2d 831, 836 (9th Cir.1983).

Thus, as long as the state law and § 553 requirements for setoff are met, "this title [including § 547 and § 550] does not affect" UJB/S' right to setoff the funds in the debtor's Account against the outstanding Loan obligation. *Id. See In re Petros Energy & Land Corp.*, 54 B.R. 432, 434 (Bankr.N.D.Okla.1985) ("A strict and literal reading of § 553 excludes *every other section of the Code* from affecting the setoff of mutual prepetition debts. Considering the protection afforded the debtor and creditors from Preferential transfers pursuant to §§ 362, 363 and § 553, this is not an unreasonable interpretation of § 553.").

UJB/S also argues that the bank was fully secured and therefore, the transfers were not preferences pursuant to § 547 of the bankruptcy code because it received no more as a result of the transfers than it would have under Chapter 7 of the Bankruptcy Code. The Trustee counters that even if UJB/S were fully secured as to the transfers, Mr. Mappa was not fully secured so that he received a benefit which exceeded what he would otherwise receive as an unsecured creditor.

■ The setoff exception in § 553 applies only to deposits made in good faith, in the due course of business, and subject to withdrawal at the will of the depositor. *In re Dutton*, 15 B.R. 318, 321 (Bankr.D.N.J. 1981). It does not apply where a deposit is accepted by a bank with an intent to apply it on a pre-existing claim against the depositor. *Id.*

The Trustee argues that the bank received a preferential transfer when funds were deposited into the debtor's bank account with United Jersey, other than in the ordinary course of business. The Trustee asserts that the debtor and the bank collusively made deposits into the Account, thus increasing the bank's collateral.

The Trustee asserts that a deposit accepted by a bank with an intent to apply it to a pre-existing claim against the depositor rather than to hold it subject to the depositor's checks or withdrawals is a transfer in payment of debt, recoverable as a preference, not as a setoff. *See Miller v. Wells Fargo Bank International Corp.*, 406 F.Supp. 452, 467 (S.D.N.Y.1975), *aff'd*, 540 F.2d 548 (2d Cir.1976). The Trustee argues that the parties agreed that money would be deposited into the debtor's ac-

count for the purpose of building up a balance against which the Bank could set-off. (Defendant's brief at p. 12).

The Trustee argues that UJB/S is guilty of unclean hands and therefore, its exercise of its setoff rights were improper. Several courts have curtailed the set-off rights of creditors who attempted to obtain preferential advantage through use of the set-off device. *See In re Frigitemp Corp.*, 34 B.R. 1000, 1017 (S.D.N.Y.1983), *aff'd*, 753 F.2d 230 (2d Cir.1985), quoting *Katz v. First National Bank*, 568 F.2d 964, 967 (2d Cir.1977) *cert. den.* 434 U.S. 1069, 98 S.Ct. 1250, 55 L.Ed.2d 771 (1978).

In this regard, Mappa argues that the bank statements annexed to the Trustee's brief show that substantial deposits in the neighborhood of $160,000.00 were regularly made at the beginning of each month and that it was these deposits which were set off or transferred by check. The bank statements of the debtor's operating account at United Jersey Bank, Account No. 007030836 (Exhibit J3 of Exhibit A to Plaintiff's (Trustee's) Brief in Opposition To Motion for Summary Judgment) includes the following deposits to that account:

| 1/6/88 | Deposit | $ 21,905.77 |
| 1/6/88 | Deposit | $142,100.00 |
| 2/4/88 | Deposit | $ 29,274.01 |
| 2/4/88 | Deposit | $139,800.00 |
| 3/4/88 | Deposit | $ 5,792.27 |
| 3/4/88 | Deposit | $125,900.00 |
| 4/6/88 | Deposit | $ 5,077.97 |
| 4/6/88 | Deposit | $115,700.00 |
| 5/4/88 | Deposit | $140,000.00 |

■ The purpose of summary judgment is to avoid a trial which is unnecessary and results in delay and expense, by promptly disposing of any actions in which there is no genuine issue of material fact. *Tomalewski v. State Farm Life Insurance Co.*, 494 F.2d 882, 884 (3d Cir.1974). Summary judgment is a "drastic remedy" which is not to be granted liberally. *Id. cited with approval in, Ness v. Marshall*, 660 F.2d 517, 519 (3d Cir.1981). A trial court may enter summary judgment only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); Bankr.R. 7056; *See generally Hollinger v. Wagner Mining Equipment Company*, 667 F.2d 402, 405 (3d Cir.1981).

■ The court must resolve all factual disputes, all doubts as to the existence of genuine issues of material fact, and any inferences that may be drawn from underlying facts against the moving party. *See Chirinos de Alvarez v. Creole Petroleum Corp.*, 613 F.2d 1240, 1244 (3d Cir.1980); *In re Windsor Communications Group, Inc.*, 68 B.R. 1007, 1010 (E.D.Pa.1986).

The party moving for summary judgment has the burden of demonstrating that there exists no genuine issue of material fact. *Fairbanks Morse & Co. v. Consolidated Fisheries Co.*, 190 F.2d 817, 824 (3d Cir.1951). Some courts have held that whenever there is even the "slightest doubt" regarding the facts of a case, summary judgment may not be granted. *Tomalewski*, 494 F.2d at 884.

■ Here, the Court finds that the deposits at issue in the subject Account created a debtor-creditor relationship between UJB/S and the debtor, as depositor, so that a debt was owed by UJB/S to the debtor in the amount of the funds deposited prior to the filing of the involuntary petition herein. The Bank's claim against the debtor was

likewise a mutual pre-petition claim. The funds on deposit in the debtor's business checking account were deposited without restriction and were not a special fund.

The Court is also satisfied that the provisions of § 553(b)(1) do not apply as the setoffs occurred more than 90 days prior to the bankruptcy filing.

Accordingly, the Second and Third Payments to UJB/S constituted valid pre-petition setoffs under both the Bankruptcy Code and relevant New Jersey law.

With regard to the first transfer by check, under the terms of the Note, UJB/S had the right to setoff the Debtor's funds contained in the Account. The Note provided:

"Bank shall have a right to setoff against and a lien upon all deposits of money and all other personal property of the undersigned now in possession of Bank for payment of this Note...."

With regard to the first transfer by check, there were funds equal to or greater than the amount of the check in the Account at the time of the transfer. Therefore, it appears that the Bank was fully secured as to the first transfer. As the Second and Third Payments were effectuated by a setoff, it appears that UJB/S was fully secured as to these payments as well. *See e.g., Matter of Kennedy Mortgage Co.*, 23 B.R. 466, 470 (Bankr.D.N.J.1982) ("Under § 506(a) the Bank would be treated as having an allowed secured claim on property that is subject to setoff under § 553 of the Code but only to the extent of the amount subject to setoff). *Accord In re Santoro Excavating, Inc.*, 32 B.R. 947, 949–51 (Bankr.S.D.N.Y.1983) ("By equating setoff with secured claims, the Code recognizes that a permitted setoff is, in effect, an allowed preference"); *Braniff Airways, Inc. v. Exxon Co.*, 814 F.2d 1030, 1034 (5th Cir.1987).

Since UJB/S was fully secured at the time of the payments, it received no more than it would have under Chapter 7 as a result of the payments. So too, the insider guarantor, Mappa, received no more benefit than he would have received otherwise because he had no exposure under the guarantee. *See In re Kroh Brothers De-velopment Co.*, 115 B.R. 1011, 1018–20 (Bankr.W.D.Mo.1990) (Since the outside creditor ... was fully secured, the transfer could not have benefitted the insider-creditor ... because it had no exposure on the obligation). *In re Acadiana Electrical Service, Inc.*, 66 B.R. 164, 166–67 (Bankr. W.D.La.1986) ("[I]f a transfer is not avoidable as against the initial transferee, its value cannot be recovered against anyone else"); *In re Gamest, Inc.*, 129 B.R. 179 (Bankr.D.Minn.1991).

The *Deprizio* court in fact considered a similar transaction by way of illustrating the consequences of an extended preference-recovery period:

A fully-secured creditor with an insider's guarantee to boot is paid off nine months before bankruptcy and releases its security interest. The debtor uses the property as security for a new loan. The trustee recovers the payment as a preference, and the creditor has been stripped of its security. The trustee confronts two obstacles in such a case. First, if the creditor was fully secured, then payment does not produce a benefit for the inside guarantor, whose exposure was zero. The preference-recovery period therefore would be only 90 days. Second, under § 547(b)(5) a transfer is avoidable only to the extent the creditor received more than it would have in a Chapter 7 liquidation. A fully-secured creditor will be paid in full under Chapter 7, so there is no avoidable preference in this case with or without a guarantee by an insider. If, on the other hand, the security covered only 90% of the debt, then only the remaining 10% of the payment is avoidable as a preference.

874 F.2d at 1199–1200.

For the reasons set forth above, the Court here grants summary judgment in favor of UJB/S and Mappa on the basis that UJB/S held a security interest in the debtor's bank account for the full value of each transfer at the time they were made and therefore, the transfers are not avoidable preferences as to either defendant. Accordingly, the Trustee's Complaint is dismissed in its entirety.

In so ruling, the court need not reach the *Deprizio* issue, nor does it by this opinion express an opinion as to the applicability of that decision to this case.

Each party shall bear its own costs.

An order shall be submitted in accordance with this opinion.