In re **ERIN FOOD SERVICES, INC., Debtor.**

**CAMBRIDGE MERIDIAN GROUP, INC./MICHAEL E. WEINGARTEN, Trustee of Erin Food Services, Inc., Plaintiff–Appellee,**

v.

**CONNECTICUT NATIONAL BANK, et al., Defendants–Appellants.**

Civ. A. Nos. 90–12639–K, 90–12640–K.
Bankruptcy No. 89–12250–HAL.
Adv. No. 90–1052.

United States District Court,
D. Massachusetts.

Sept. 18, 1991.

## OPINION

KEETON, District Judge.

This case comes before this court on appeal by defendants-appellants (the "Secured Lenders") from orders of the United States Bankruptcy Court for the District of Massachusetts, dated September 11 and 25, 1990. At issue is the avoidability of certain interest payments made by Erin Food Services ("Erin") to Secured Lenders between 90 days and one year before the filing of a bankruptcy petition by Erin on March 28, 1989 (the "Petition Date"). The interest payments were due on loans made by the Secured Lenders to Erin that were secured by property owned by Erin officer David W. Murray ("Murray"). Secured Lenders challenge, *inter alia,* the Bankruptcy Court's application of the Seventh Circuit's decision and reasoning in *Levitt, Trustee of V.N. Deprizio Construction Co. v. Ingersoll Rand Financial Corp.,* 874 F.2d 1186 (7th Cir.1989) (*"Deprizio"*), applying the one year time limitation of 11 U.S.C. § 547(b)(4)(B) to interest payments made on loans secured by insider guarantees. For reasons explained in this Opinion, I conclude that the Bankruptcy Court was correct in its rulings of law and did not make any clearly erroneous findings of fact. The Bankruptcy Court's decision, as modified by its Order of September 25, 1990, will be affirmed.

In February 1990, the Trustee, as successor to Erin's former management, initiated an adversary proceeding against the Secured Lenders and Murray, Erin's sole shareholder. In addition to other relief not

relevant here, the Trustee sought to recover interest payments made to the Secured Lenders within one year of the Petition Date, on the grounds that they were preferential transfers under 11 U.S.C. § 547. The answer filed by Secured Lenders included defenses under § 547(c)(1) ("contemporaneous exchange") and § 547(c)(2) ("ordinary course"). On July 16, 1990, after trial, the Bankruptcy Court entered its decision reported as *In re Erin Food Services, Inc.*, 117 B.R. 21 (Bankr.D.Mass.1990), ruling that the Secured Lenders had a valid secured claim in the principal amount of $55,913,459 and an equitably subordinated claim in the amount of $5,827,541. The Bankruptcy Court also ruled that the interest payments were not avoidable by the Trustee because they were "contemporaneous exchanges."

After a hearing on August 28, 1990, on the Trustee's Motion for Reconsideration, the Bankruptcy Court vacated its earlier ruling as to "contemporaneous exchange" and, by Orders of September 11 and 25, 1990, determined that interest payments of $2,808,290 made to the Secured Lenders within the year before the Petition Date (1) were preferential under § 547(b), (2) were not protected by § 547(c)(1), but (3) were— to the extent of $719,231—protected by the "new value" defense under § 547(c)(4). Thus, the Bankruptcy Court determined, Secured Lenders received avoidable preferences in the amount of $2,089,059 ($2,808,-290 less $719,231).

Secured Lenders appeal from the Orders of September 11 and 25, 1990.

Secured Lenders have argued on appeal, both orally and in their briefs:

(1) that the Bankruptcy Court erred in adopting the Seventh Circuit's reasoning in *Deprizio* and applying the one year recovery of payments limitation of § 547(b)(4)(B) to interest payments on debt secured by insider guarantees;

(2) that even if the one year limitation is applicable in this case, the Bankruptcy Court erred in concluding that the Trustee had satisfied his burden of proof as to the other provisions of 11 U.S.C. § 547(b), in

that Murray did not receive a "benefit" as required by § 547(b)(1);

(3) that the Bankruptcy Court erred in concluding that the Trustee had satisfied his burden of proof as to § 547(b)(5), in that the interest payments did not enable Murray to receive more than he would have received if the "case were a case under chapter 7";

(4) that the Bankruptcy Court erred in determining that the interest payments did not qualify for the "ordinary course of business" exception of § 547(c)(2);

(5) that the Bankruptcy Court erred in determining that the interest payments did not qualify for the "contemporaneous exchange" exception of § 547(c)(1); and,

(6) that the Bankruptcy Court erred in determining that the interest payments made on loans backed by insider guarantees may be recovered from the Secured Lenders under 11 U.S.C. § 550, rather than holding that the Trustee's right of recovery in these circumstances is against the insider guarantor alone.

### I.

▮ In order to avoid a transfer, the Trustee must prove the existence of each of the five elements of 11 U.S.C. § 547(b). If the Trustee does so, the transferee(s) may assert each of the defenses permitted by § 547(c).

Section 547(b) provides as follows:

(b) Except as provided in subsection (c) of this section, the trustee may avoid any transfer of property of the debtor—

(1) to or for the benefit of a creditor;

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent;

(4) made—

(A) on or within 90 days before the date of the filing of the petition; or

(B) between 90 days and one year before the date of filing of the petition if such creditor at the time of such transfer—

(i) was an insider; and

(ii) had reasonable cause to believe the debtor was insolvent at the time of such transfer; and

(5) that enables such creditor to receive more than such creditor would receive if—

(A) the case were a case under chapter 7 of this title;

(B) the transfer had not been made; and

(C) such creditor received payment of such debt to the extent provided by the provisions of this title.

11 U.S.C. § 547(b).

In this case, the Bankruptcy Court determined that the extended time period of 11 U.S.C. § 547(b)(4)(B) applies to the contested interest payments made by Erin to the Secured Lenders between 90 days and one year before the Petition Date because the underlying loan was secured by property owned by insider Murray. Insofar as the issue is one of statutory interpretation, the Bankruptcy Court's decision is reviewable nondeferentially (or *"de novo,"* as commonly stated). *In re Gonic Realty Trust,* 909 F.2d 624, 626 (1st Cir.1990).

Although the precise issue presented here has not been decided previously in the First Circuit, and perhaps not even in other courts in view of the quite distinctive facts of this case, many courts in other circuits have ruled upon a somewhat similar issue. Of the numerous decisions only three come from Courts of Appeals. All three Courts of Appeals have favored the position asserted by the Trustee here. A substantially larger number of Bankruptcy and District Courts have held otherwise. Even if it should be held that precisely the same issue as to which the courts are divided is present in this case, I conclude that the Bankruptcy Court did not err in reaching the same result as the three Courts of Appeals. *See In re C–L Cartage Co., Inc.,* 899 F.2d 1490 (6th Cir.1990); *Deprizio,* 874 F.2d at 1194–1200 (7th Cir.1989); *In re Robinson Bros. Drilling, Inc.,* 97 B.R. 77 (W.D.Okla.1988), *aff'd,* 892 F.2d 850 (10th Cir.1989). This result is supported by a thorough parsing of the text of the relevant sections of the statute.

The extended time period of § 547(b)(4)(B) applies only if "such creditor at the time of such transfer was an insider." The defendants-appellants argue that "such creditor" as used in § 547(b)(4)(B) refers to the Secured Lenders, not to the insider Murray, because the Secured Lenders are the creditors to whom Erin made the transfer. Since Secured Lenders are outsiders, the time period of § 547(b)(4)(B) would not apply. They argue further that to hold that "such creditor" refers to the insider Murray, and thus avoid the transfer to outsiders Secured Lenders, would render meaningless the statute's different time periods for inside and outside creditors. *See* Secured Lenders' Brief at 9–10. This contention must be rejected.

The phrase "such creditor" refers to the "creditor" identified in subsection (b)(1). *See In re C–L Cartage Co., Inc.,* 899 F.2d at 1493. The term "creditor" is defined for the purposes of the Bankruptcy Code at 11 U.S.C. § 101(10)(A) (Supp.1991) as an "entity that has a claim against the debtor." The term "claim" is defined at 11 U.S.C. § 101(5) to include the contingent right to payment. As the owner of property pledged to secure Erin's debt, Murray held a contingent claim against Erin should the collateral be required to satisfy the debt, and was therefore a "creditor" within the meaning of the statute. Neither party disputes that Murray, as an officer of Erin, was an insider as defined in the Bankruptcy Code at 11 U.S.C. § 101(31)(B)(ii). Since Murray was both creditor and insider to Erin, the one year limitation of § 547(b)(4)(B) was properly invoked by the Bankruptcy Court. This meaning of the statute is, for reasons explained in Parts II–VI of this Opinion, consistent with the manifested objectives of all the relevant provisions of the statute, construed together as a whole.

## II.

Secured Lenders contend that the Trustee did not meet his burden of proving that the interest payments were transfers "to or for the benefit of" creditor Murray as required by § 547(b)(1). They argue

that because the guarantee was on a non-recourse basis, secured only by property owned by Murray and not by his personal guarantee, and, because the value of the collateral owned by Murray was less than the amount outstanding on the loan, the interest payments made by Erin to Secured Lenders never yielded a benefit to insider-creditor Murray. Put another way, Secured Lenders argue that Murray could not have "benefited" from the interest payments made to Secured Lenders because, even after the interest payments were made, Murray will still lose his entire collateral in proceedings to settle the obligation. Put yet another way, Secured Lenders argue that § 547(b)(1) requires a "tangible" or "economic" benefit and that Murray could not realize any "tangible" or "economic" benefit from directing preferential payments to Secured Lenders.

A "transfer of property" may be made "to or for the benefit of a creditor," however, even without an eventual real-dollar recovery on the part of the creditor. Guarantees are commonly concerned with probability rather than certainty of payoff in dollars. Secured Lenders acknowledge, as they must to be candid, that in ordinary circumstances "payment by the obligor to the holder of a guaranteed obligation provides 'benefit' to the insider-guarantor because it reduces the guarantor's contingent obligation on his guaranty." Secured Lender's Brief at 12. Likewise, such payment improves the guarantor's position with respect to the probability that, as a contingent creditor, he will be able to recover over against the debtor, in part at least, should the debtor go into bankruptcy. An insider, by encouraging such payment, may cause the debtor "to pay off these guaranteed loans prior to the payment of other obligations" and thus "direct[ ] resources to protect" the insider. *In re Robinson Bros. Drilling, Inc.*, 97 B.R. at 82–83 n. 5. The fact that the obligation is non-recourse reduces the dimension but does not change the fact of this benefit.

A fallacy of the Secured Lenders' contention is illustrated by the point that their reasoning (by which they purport to distinguish between a non-recourse and a general creditor) would apply not only to a non-recourse guarantor, but also to an insider guarantor whose net worth is less than the obligation outstanding at the time of the payments to the outside creditors.

That having such payments made is an advantage to an insider guarantor (whether non-recourse or general) cannot be doubted. Even when the excess of the debt over the value of collateral is large, a small reduction on contingent liability may produce a real dollar consequence in the end. One obvious reason is the possibility of fluctuations—both in property values and in the circumstances of the debtor's business—before the end result is determined. Not knowing the future, the insider both subjectively expects and objectively realizes a "benefit" by the reduction of the ultimate obligation secured by the insider's property that is part of the collateral for the loan. Moreover, the insider receives a benefit because the payments tend to defer the time the insider is likely to be called upon to satisfy his contingent liability as a guarantor. Thus by causing the payments to be made the insider guarantor buys time to try to work out some solution to the impending financial disaster.

In this case, the Bankruptcy Court made a finding as follows:

> Travelers argues that the non-recourse nature of the guaranty means no benefit, but that does not follow since the larger obligation of Murray's Burger King property has to protect the greater, his likelihood of ultimate liquidation or smaller, his recovery of those assets. The interest payments were payments of debtor's funds on an antecedent debt while the debtor was insolvent, and since it was a dollar-for-dollar payment while the debtor was insolvent based on this now undersecured claim would result in a larger payment than the credit would get in Chapter 7.

*In re Erin Food Services, Inc.*, 117 B.R. at 29–30.

Secured Lenders are in no position to complain about ambiguity as to the precise rationale of this finding. The Bankruptcy

Court's intent to make a factfinding of "benefit" is manifest, and Secured Lenders did not seek clarification of that court's underlying reasoning in the Bankruptcy Court. Rather than requesting a remand for clarification now, they request that this court make findings itself. This court, however, is without authority to do so, even if all parties so requested.

In summary, this court reviews factual findings of the Bankruptcy Court under a clearly erroneous standard. *In re The Bible Speaks*, 869 F.2d 628, 629 (1st Cir.), *cert. denied* 493 U.S. 816, 110 S.Ct. 67, 107 L.Ed.2d 34 (1989). The Bankruptcy Court's finding of "benefit" to the creditor Murray is supported by evidence in the record. In these circumstances this court cannot rule either that it is clearly erroneous in fact or that it is in some way founded on or affected by an error of law.

### III.

■ The finding quoted in Part II, *supra*, bears also upon the issue regarding § 547(b)(5). That section compares the value received by a creditor (in this case, Murray) when the payments are made, with the value the creditor would have received in a hypothetical distribution under chapter 7 of the Bankruptcy Code. Secured Lenders again argue that as long as the debt outstanding on the obligation to Secured Lenders exceeded the value of Murray's collateral, the payments could not possibly cause Murray to receive more in a chapter 7 liquidation than he would receive if such payment had not been made. A fallacy of this argument is an unstated assumption that the determination of what would be received in the chapter 7 liquidation must be made with precision, and that no finding of precise dollars of benefit was made here. Contrary to this argument for precision, I conclude that the determination is necessarily a hypothetical one— "enables such creditor to receive more than such creditor *would* receive *if ... the case were* a case under chapter 7," § 547(b)(5) (emphasis added)—and a hypothetical determination never can be made with dollar and cents precision.

The determination concerns the effect of a hypothetical chapter 7 liquidation on the *contingent creditor.* Such a determination inevitably is evaluative rather than precise in nature. The effect of the challenged interest payment on the contingent liability of Murray was explicitly addressed by the Bankruptcy Judge in the finding quoted in Part II of the Opinion, *supra.* That finding is not clearly erroneous. Nor is the issue one to be decided as a matter of law. It is a question of fact, on the record in this case, whether the Trustee proved that the challenged interest payments enabled Murray to receive more than he would receive in a hypothetical distribution under chapter 7. That finding is conclusive.

### IV.

■ Secured Lenders next contend that the Bankruptcy Court erred in determining that the interest payments did not qualify for the "ordinary course of business" exception of § 547(c)(2). Citing *In Matter of CHG International, Inc.*, 897 F.2d 1479 (9th Cir.1990), the Bankruptcy Court stated "that interest on a long-term debt is a preference and not a payment in the ordinary course [of business]." Status of Secured Claim at 18. Secured Lenders point to cases in other circuits that reach a different result. *See, e.g., In re Finn*, 909 F.2d 903, 906–07 (6th Cir.1990); *In re Smith Douglass, Inc.*, 842 F.2d 729, 730 (4th Cir.1988). They are inapposite here, however, because neither the long-term debt nor the interest obligation involved in this case was incurred in "the ordinary course of business" as that phrase is used in § 547(c)(2)(A). For this reason, I need not resolve the dispute as to whether interest payments on long term debt in general are as a matter of law outside the ambit of the § 547(c)(2) exception.

The Bankruptcy Court found that the debt incurred by Erin in this single transaction resulted in a $23 million reduction in Erin's net worth. Status of Secured Claim at 16. The Bankruptcy Court also found that as a result of the transaction, Erin's cash flow was insufficient to service the debt, *id.* at 17, and determined that "[i]n

sum, the debtor was insolvent as a result of this refinancing." *Id.* I conclude that these findings, which are not clearly erroneous, establish that the debt was not "incurred by the debtor in the ordinary course of business." Also, interest payments made on this debt were not "incurred ... in the ordinary course of business" and are not subject to the protection of the § 547(c)(2) exception.

### V.

■ Secured Lenders contend that the Bankruptcy Court erred when it reversed its earlier determination that the interest payments qualified for the "contemporaneous exchange" exception. That portion of the statute provides in relevant part:

(c) The trustee may not avoid under this section a transfer—

(1) to the extent that such transfer was

(A) intended by the debtor and the creditor ... to be a contemporaneous exchange for new value....

11 U.S.C. § 547(c). At issue is the factual determination of the Bankruptcy Court that although Secured Lenders transferred "new value" to Erin in the form of new money under the revolving loan, and Erin intended a portion of the new money to be used for interest payments to Secured Lenders, the creditor (Secured Lenders) lacked the requisite intent to provide a "contemporaneous exchange for new value." The Bankruptcy Court thus determined that subdivision (c)(1)(A) was not satisfied.

As I noted in Part II, *supra*, this court reviews factual findings of the Bankruptcy Court under a clearly erroneous standard. The testimony of Franz Pool provides a more than adequate basis for the Bankruptcy Court's finding regarding the intent of Secured Lenders, Record on Appeal, Item 12(b) at 70–72, 75, 129–131, 139–140, thus undercutting Secured Lenders' argument even if its legal premises are accepted. The Bankruptcy Court's finding with regard to the "contemporaneous exchange" exception of § 547(c)(1) is affirmed.

### VI.

■ Finally, Secured Lenders argue that the Bankruptcy Court erred in determining that the interest payments made on loans backed by insider guarantees may be recovered from the Secured Lenders under 11 U.S.C. § 550 rather than limiting recovery in these circumstances to Murray alone. Section 550 provides in relevant part:

(a) Except as otherwise provided in this section, to the extent that a transfer is avoided under section 544, 545, 547, 548, 549, or 724(a) of this title, the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from—

(1) the initial transferee of such transfer or the entity for whose benefit such transfer was made; ....

The plain language of § 550(a)(1) provides for recovery of preferential payments from either the "initial transferee" (Secured Lenders) or "the entity for whose benefit such transfer was made" (Murray). Secured Lenders equity-and-policy arguments are consistent neither with the weight of the precedents, *see, e.g., In re C–L Cartage Co., Inc.,* 899 F.2d at 493–94, nor the manifested meaning of the statute. Trustee may recover the interest payments from Secured Lenders who occupy the position of "initial transferee" under § 550(a)(1).

The Bankruptcy Court's decision as modified by its final Order of September 25, 1990, is affirmed.

The Clerk of this court shall enter forthwith a separate document so ordering.