In re CANNON BALL INDUSTRIES, INC., BMC America, Inc., (Cons.), Debtors.

CANNON BALL INDUSTRIES INC., and BMC America, Inc., Plaintiffs,

v.

SEQUA CORPORATION, Defendant.

No. 93 C 20009.

United States District Court, N.D. Illinois, W.D.

May 28, 1993.

Kim Marie Casey, Holmstrom & Kennedy, Rockford, IL, Robert W. Gettlemen, D'Ancona & Pflaum, Chicago, IL, for plaintiff.

James E. Stevens, Barrick, Switzer, Long, Balsley & Van Evera, Rockford, IL, Ronald R. Peterson, Jenner & Block, Chicago, IL, for defendant.

### ORDER

REINHARD, District Judge.

### INTRODUCTION

Defendant, Sequa Corporation (Sequa), appeals the decision of the bankruptcy court, 150 B.R. 929, which held that payments made by a debtor to a creditor conferred a benefit on an insider guarantor even though the payments did not reduce the debt to an amount less than the guaranty. The bankruptcy court entered judgment in favor of debtor plaintiffs, Cannon Ball Industries, Inc. (Cannon Ball) and BMC America, Inc., in the amount of $43,-984.36. Jurisdiction is premised on 28 U.S.C. § 158(a).

### FACTS

Cannon Ball, formerly known as Starline Products, Inc., (Starline) is an Illinois corporation. On or about September 9, 1982,

no longer exempt the deducted wages. Ill.Rev. Stat. ch. 110, ¶ 12–1001.

Starline executed a note in the principal amount of $750,000 to Chromalloy American Corp., a subsidiary of Sequa. On that same date, three shareholders (guarantors) of Starline executed a guarantee of $150,000 of the loan obligation of Starline to Chromalloy.

On or about October 3, 1989, debtors filed separate petitions for relief pursuant to Chapter 11 of the Bankruptcy Code. Within one year prior to that filing, debtors made four payments to Sequa on the note, totalling $43,984.36. At the time of the filing of the bankruptcy petitions, $400,000 remained due under the note.

The bankruptcy court ruled that the guarantors received a benefit from the $43,984.36 in payments, and, thus, such payments were recoverable from the creditor (Sequa) as voidable preferences under 11 U.S.C. § 547.[1] In so ruling, the bankruptcy court relied, in part, on *Levit v. Ingersoll Rand Fin. Corp.*, 874 F.2d 1186 (7th Cir.1989) (commonly referred to as "*Deprizio*") and also cited *In re Erin Food Serv. Inc.*, 140 B.R. 14 (Bankr.D.Mass. 1991). *Erin Food* was reversed on appeal five days after the bankruptcy court issued its memorandum opinion. *See In re Erin Food Serv. Inc.*, 980 F.2d 792 (1st Cir. 1992).

### CONTENTIONS

Sequa's principal appellate argument is that the *Deprizio* holding does not extend to a situation where the insider guarantor has guaranteed an amount which remains less than the debt at the time the transfer (payment) is made by the debtor to the creditor (lender). In other words, Sequa maintains that the payments by debtors to Sequa did not directly benefit the guarantors and thus did not qualify as voidable preferences. Furthermore, Sequa contends it was uncontroverted that the guarantors did not intend to benefit themselves by causing the payments to be made. Finally, Sequa asserts that this court should follow the recent First Circuit opinion in *Erin Food* as it addresses the same issue presented here.

Debtors respond that the Seventh Circuit, in *Deprizio*, intended that transfers which do not result in a direct, dollar-for-dollar reduction of a guarantee obligation are nevertheless avoidable because they confer an indirect benefit on the guarantor by reducing the guarantor's risk of liability. Additionally, debtors assert that the intent of the guarantors is irrelevant to the question of whether the transfers are avoidable. Lastly, debtors posit that the First Circuit misapplied the *Deprizio* decision.

### DISCUSSION

■ The district court reviews conclusions of law by the bankruptcy court *de novo*. *In re Newman*, 903 F.2d 1150, 1152 (7th Cir.1990). The issue presented in this appeal is a purely legal one compelling this court's *de novo* review.

■ The precise issue here is whether the guarantors received a benefit within the meaning of section 547(b) of the Bankruptcy Code when payments made within one year prior to the institution of Chapter 11 proceedings reduced the debt but not to a point where it was less than the guarantee amount. The *Deprizio* decision did not address itself to this exact issue. Rather, the explicit holding in *Deprizio* was that the one-year period applicable to insider

---

1. Section 547 of the Bankruptcy Code provides in relevant part:

(b) ... the trustee may avoid a transfer of an interest of the debtor in property—

(1) to or for the benefit of a creditor;

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent;

(4) made—

(A) on or within 90 days before the data of the filing of the petition; or

(B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was as insider; and

(5) that enables such creditor to receive more than such creditor would receive if—

(A) the case were a case under Chapter 7 of this title;

(B) the transfer had not been made; and

(C) such creditor received payment of such debt to the extent provided by the provisions of this title.

creditors under section 547(b)(4)(B) applied to situations where an insider had guaranteed a loan to a noninsider creditor and payments were made to the noninsider creditor that would otherwise qualify as avoidable under section 547(b). More importantly, the *Deprizio* court concluded that the bankruptcy trustee could recover the avoided transfer from the noninsider creditor under such circumstances. *See Deprizio,* 874 F.2d at 1194–1200. In so holding, the Seventh Circuit was not required to expressly decide the question of what constitutes a benefit under section 547(b)(1).

The *Deprizio* court did make the general statement that a payment by the debtor to the lender is for the benefit of the guarantor under section 547(b)(1) because every reduction in the debt reduces the guarantor's exposure. *Deprizio,* 874 F.2d at 1190. It is impossible to discern, however, what the court of appeals meant by a reduction of the guarantor's exposure in that case. This is so because it is unknown what the relationship was in *Deprizio* between the amount of the guarantee and the debt balance. It may very well have been in that case that the debt had been reduced below the guarantee amount by the challenged transfer, and, thus, there was an actual dollar-for-dollar reduction in the guarantee obligation. That would certainly reduce the exposure of the guarantor and result in a benefit to the guarantor.

On the other hand, it is more difficult to infer that the Seventh Circuit meant to include, in its reference to a reduction in a guarantor's exposure, the decrease in a debt amount that has no direct effect on the guarantee amount. The guarantor's liability exposure remains the same whether the debt is one million dollars more than the guaranty or one dollar more. If the debtor defaults in either case, the guarantor is on the hook.

Moreover, under the *Deprizio* rule, a guarantor is considered a "creditor" in a debtor's bankruptcy by virtue of his contingent right to payment from the debtor which will come to full fruition should the noninsider creditor collect on the guaranty. *See Deprizio,* 874 F.2d at 1190. Thus, the extent of the guarantor-creditor's claim is defined by the amount of his guaranty. Until the guaranty is actually reduced, his potential claim against the debtor remains constant. In this context, because transfers made within one year of bankruptcy are avoidable based on the insider guaranty, it would be consistent to interpret the term benefit to only extend to an actual reduction in the guaranty obligation.

Furthermore, the fact that an insider guarantor exists only implicates section 547(b) to the extent the insider has guaranteed a debt. In a case like the present one, the insider has not guaranteed the entire debt but only $150,000 of it. A portion of the debt is not guaranteed at all. There is no logical or legal reason to apply the longer time period of section 547(b)(4)(B) to a debt not guaranteed by an insider or not owed to an insider creditor. Certainly, if none of a particular debt were guaranteed by an insider, no one could persuasively argue that section 547(b)(4)(B) applied. It is only logical, and consistent with the reasoning of *Deprizio,* that payments made within one year of a bankruptcy filing that do not reduce the debt to the point the guaranty is reduced do not qualify as avoidable under section 547(b).

While not binding authority on this court, the First Circuit recently held that an insider guarantor receives no cognizable benefit within the meaning of section 547(b) where payments are made that do not reduce the primary debt to an amount less than the guaranty. *In re Erin Food Serv. Inc.,* 980 F.2d 792, 801–02 (1st Cir.1992).[2] Although

---

**2.** The court recognizes that in *Erin Food* the First Circuit stated that whether a creditor has received a benefit from the challenged transfer for purposes of section 547(b) is a question of fact. Nevertheless, where, as here, the parties agree on the uncontested material facts, summary judgment is an appropriate form of disposition. This is especially so here where the trustee seeks to avoid the transfers and thus has the burden of establishing the benefit under section 547(b). It is incumbent upon the trustee to offer evidence of the purported benefit. Here, that evidence is that payments were made on a debt partially guaranteed by an insider.

the secured lenders in that case received the full benefit of the $2.8 million received in interest payments, there was no reduction in the insider's liability on his guarantee. The court held a cognizable benefit was not established solely on the basis of a loan payment of $2.8 million when the debt amount was $61.7 million and the guaranty amount was $19.35 million. *Erin Food*, 980 F.2d at 802.

 Finally, this court does not agree with the bankruptcy court's expansive interpretation of benefit to include "potential benefit." First, the plain language of section 547(b) refers to benefit. There is nothing in the language of section 547(b) to suggest that benefit is equivalent to potential or possible benefit. Second, it cannot necessarily be said that with each payment the guarantors were brought one step closer to the direct reduction of their guarantee. Each payment may very well have brought Cannon Ball closer to bankruptcy and thus increased the likelihood that the guarantors would become liable to Sequa. Suffice it to say, the concepts of potentiality and possibility carry with them all sorts of unknown or unpredictable consequences which do not readily lend themselves to an ascertainable determination of the existence of a benefit. Consequently, this court does not consider the term "benefit" in section 547(b) to embrace potential benefit.

In so holding, this court is aware that the Seventh Circuit did not expressly limit the definition of benefit in *Deprizio* to an immediate, dollar-for-dollar reduction in the guarantee.[3] The absence of such a limitation is unpersuasive, however, as the *Deprizio* court did not directly address the question of what constitutes a benefit. Nor is such a definition implicit from the opinion as the facts do not reveal the amount of the guaranty or the amount of the debt.

All that remains is legal argument for the court to consider.

3. This court does not attempt to fully define "benefit" based on the limited circumstances

## CONCLUSION

For the foregoing reasons, the order of the bankruptcy court entering judgment in favor of Cannon Ball and BMC America, Inc., in the amount of $43,984.36 is reversed, and judgment is entered in favor of Sequa.

present here. Rather, the court merely finds that no benefit was received under this particular factual scenario.