2 F.3d 977
 62 USLW 2136, 24 Bankr.Ct.Dec. 1011,
Bankr. L. Rep. P 75,396
 In re SUFOLLA, INC., dba Lewis Packing Co., Debtor.
OFFICIAL UNSECURED CREDITORS COMMITTEE OF SUFOLLA, INC., on
behalf of the ESTATE OF SUFOLLA, INC., dba Lewis
Packing Co., Plaintiff-Appellee,
v.
U.S. NATIONAL BANK OF OREGON, a National Banking
Association, Defendant-Appellant.
 No. 92-35202.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted July 14, 1993.
Decided Aug. 23, 1993.
 
 John Casey Mills, Miller, Nash, Wiener, Hager & Carlsen, Portland, OR, for defendant-appellant.
 Michael F. Crotty, Deputy Gen. Counsel for Litigation, American Bankers Ass'n, Washington, DC, for amicus.
 No appearance for plaintiff-appellee.
 Appeal from the United States District Court for the District of Oregon.
 Before: GOODWIN, FARRIS, and THOMPSON, Circuit Judges.
 FARRIS, Circuit Judge:
 
 
 1
 U.S. National Bank of Oregon appeals the district court's judgment in favor of the Official Unsecured Creditors Committee of Sufolla, Inc., in the Committee's action to recover a transfer made by the Chapter 11 debtor to the Bank. The district court found the transfer to be preferential and allowed the Creditors Committee to recover against the Bank pursuant to 11 U.S.C. Sec. 550(a)(1). After examining for the first time the problem of the "trilateral preference," we affirm.
 
 I.
 
 2
 On December 11, 1985, Sufolla entered into a loan and security agreement with the Bank whereby the Bank agreed to supply Sufolla with a line of credit and Sufolla granted the Bank a security interest in certain collateral to secure any resulting indebtedness. The Bank subsequently perfected its interest. Sufolla's obligation was guaranteed by certain of its shareholders.
 
 
 3
 Sufolla filed a voluntary petition for reorganization on June 9, 1988. Prior to March 9, 1988, but subsequent to June 9, 1987, Sufolla paid the Bank $4,322.05 from the sale of equipment, a source other than collateral.
 
 
 4
 The Official Unsecured Creditors Committee initiated an adversary proceeding against the Bank in the United States Bankruptcy Court for the District of Oregon, seeking, inter alia, to avoid and recover the payment to the Bank.[1] The bankruptcy court concluded that the transfer was a preference recoverable directly from the Bank and entered judgment against the Bank for $4,322.05. The Bank appealed to the United States District Court for the District of Oregon, which affirmed the judgment of the bankruptcy court. This appeal followed.[2]
 
 
 5
 The issue presented is one of statutory construction. We review the district court's judgment de novo. Briggs v. Kent (In re Professional Inv. Properties of America), 955 F.2d 623, 626 (9th Cir.), cert. denied, --- U.S. ----, 113 S.Ct. 63, 121 L.Ed.2d 31 (1992).
 
 II.
 A.
 
 6
 Section 547(b) of the Bankruptcy Code permits the trustee in bankruptcy to avoid certain prepetition transfers of property interests of the debtor.[3] Section 547(b)(4)(B) establishes an extended preference recovery period for transfers made to or for the benefit of an insider. The one-year preference period is designed to deter insiders from influencing an insolvent debtor to distribute its remaining assets in a manner that benefits the insider to the detriment of non-insider creditors. Section 550(a) empowers a trustee in bankruptcy to recover transfers avoided under Sec. 547(b).[4]
 
 
 7
 The individuals who guaranteed Sufolla's obligation are "insiders" within the meaning of Sec. 547(b)(4)(B), see 11 U.S.C. Sec. 101(31) (Supp. III 1991). None of the defenses in Sec. 547(c) are implicated. The guarantors are also "creditors" within the meaning of Sec. 547(b)(1) because they have a contingent right to payment from the debtor. See 11 U.S.C. Sec. 101(10), (5) (Supp. III 1991).
 
 
 8
 In the customary trilateral preference case, the debtor transfers an interest in property to a non-insider creditor within one year--but not within ninety days--of bankruptcy. The trustee, representing the unsecured creditors of the debtor, seeks to avoid the transfer under Sec. 547(b) and to recover from the non-insider under Sec. 550(a), on the theory that the transfer benefited the insider guarantor by reducing the guarantor's exposure on the debtor's obligation.
 
 B.
 
 9
 Although we confront this issue for the first time, four circuits have held that a trustee may recover from an outside creditor a transfer made within one year of bankruptcy, where the transfer benefits an inside guarantor. See Levit v. Ingersoll Rand Fin. Corp. (In re V.N. Deprizio Constr.), 874 F.2d 1186 (7th Cir.1989); Southmark Corp. v. Southmark Personal Storage, Inc. (In re Southmark Corp.), 993 F.2d 117, 120 (5th Cir.1993); Ray v. City Bank & Trust Co. (In re C-L Cartage Co.), 899 F.2d 1490 (6th Cir.1990); Manufacturers Hanover Leasing Corp. v. Lowrey (In re Robinson Bros. Drilling, Inc.), 892 F.2d 850 (10th Cir.1989), aff'g, Lowrey v. First Nat'l Bank of Bethany (In re Robinson Bros. Drilling, Inc.), 97 B.R. 77 (W.D.Okla.1988); see also T.B. Westex Foods, Inc. v. Federal Deposit Ins. Corp. (In re T.B. Westex Foods, Inc.), 950 F.2d 1187 (5th Cir.1992) (allowing recovery from garnishor of payment made by debtor garnishee, where payment benefited garnishee's insider).
 
 
 10
 The leading case is In re Deprizio, upon which the bankruptcy court and the district court relied. Deprizio employed a "literal-reading" approach to the interpretation of Secs. 547(b) and 550(a). See generally Hank J. Brands, The Interplay Between Sections 547(b) and 550 of the Bankruptcy Code, 89 Colum.L.Rev. 530, 539 (1989). The Deprizio analysis begins with Sec. 547(b), which defines those transfers that are avoidable. Deprizio, 874 F.2d at 1194. Transfers benefiting inside creditors are subject to the extended preference period of Sec. 547(b)(4)(B).
 
 
 11
 Under Deprizio, once it is determined that the elements of Sec. 547(b) are satisfied, the unambiguous language of Sec. 550(a) then identifies the party responsible for repayment of the preference. Id. Section 550(a), unlike Sec. 547(b), makes no distinction between insiders and outsiders; recovery may be obtained from either the initial transferee (the outside creditor) or the entity for whose benefit the transfer was made (the inside creditor), id.; In re C-L Cartage, 899 F.2d at 1494, but not both, see 11 U.S.C. Sec. 550(c) ("The trustee is entitled to only a single satisfaction....").
 
 C.
 
 12
 Several bankruptcy courts have concluded that an insider's guaranty does not expose an outside lender to the extended preference recovery period of Sec. 547(b)(4)(B), relying on their "equitable" powers to circumvent the "plain meaning" of Secs. 547(b) and 550(a). See, e.g., Official Creditors' Comm. of Arundel Hous. Components, Inc. (In re Arundel Hous. Components, Inc.), 126 B.R. 216, 219 (Bankr.D.Md.1991); Block v. Texas Commerce Bank Nat'l Ass'n (In re Midwestern Cos.), 96 B.R. 224, 225-28 (Bankr.W.D.Mo.1988), aff'd 102 B.R. 169 (W.D.Mo.1989); In re Aerco Metals, Inc., 60 B.R. 77, 82 (Bankr.N.D.Tex.1985); Schmitt v. Equibank (In re R.A. Beck Builder, Inc.), 34 B.R. 888, 894 (Bankr.W.D.Pa.1983).
 
 
 13
 Courts applying the "equitable approach" invariably cite Collier on Bankruptcy:
 
 
 14
 In some circumstances, a literal application of section 550(a) would permit the trustee to recover from a party who is innocent of wrongdoing and deserves protection. In such circumstances the bankruptcy court should use its equitable powers to prevent an inequitable result.
 
 
 15
 ....
 
 
 16
 The result produced by Deprizio and those courts that follow it is inequitable and produces the anomalous result that a creditor who does not demand a guarantee can be in a better position than one who does.
 
 
 17
 4 Collier on Bankruptcy p 550.02 at 550-12 to 550-14 (Lawrence P. King, ed., 15th ed. 1993).
 
 
 18
 The courts of appeals that have discussed the equitable approach unanimously have rejected it. In In re C-L Cartage, the Sixth Circuit held that bankruptcy courts "cannot use equitable principles to disregard unambiguous statutory language." 899 F.2d at 1494 (citing Norwest Bank Worthington v. Ahlers, 485 U.S. 197, 206, 108 S.Ct. 963, 969, 99 L.Ed.2d 169 (1988) ("whatever equitable powers remain in the bankruptcy courts must and can only be exercised within the confines of the Bankruptcy Code.")); accord Deprizio, 874 F.2d at 1197; In re Robinson Bros., 97 B.R. at 82 ("The equitable powers of the bankruptcy court under Section 105 to avoid strict construction of the Code is limited."); Zolg v. Kelly (In re Kelly), 841 F.2d 908, 913 n. 4 (9th Cir.1988) ("Bankruptcy judges have no more power than any others to ignore the plain language of a statute in order to reach a result more in keeping with their notions of equity.") (citation omitted); see also Brands, supra, at 539 ("Equitable interpretation without more ... is an inappropriate tool to insulate from liability an initial transferee who did not supply the factual predicate for avoidance.").
 
 
 19
 In Deprizio, the Seventh Circuit went even further, questioning the premise that recovery against the outside lender is inequitable:
 
 
 20
 Rules of law affecting parties to voluntary arrangements do not operate "inequitably" in the business world--at least not once the rule is understood. Prices adjust.... A rule may injure debtors and creditors by foreclosing efficient business arrangements and increasing the rate of interest low-risk borrowers must pay, ... but inefficiency is not inequity. At all events, in what sense is it "inequitable" to recapture payments to creditors that may have been favored only because payment reduced insiders' exposure (recall that the insiders select which debts to pay first), then distribute these monies according to statutory priorities and contractual entitlements? In what sense is it "inequitable" to require the outside lenders to pursue the inside guarantors for any shortfall, when they bargained for exactly that recourse?
 
 
 21
 874 F.2d at 1198 (citations omitted).
 
 
 22
 The above-quoted comments may be particularly apt where, as here, the guarantors are (and presumably were at the time they made the guaranty) insolvent, for in such cases the sole purpose of demanding a guaranty may be to gain improper leverage over the debtor. See Jay L. Westbrook, Two Thoughts About Insider Preferences, 76 Minn.L.Rev. 80-81 (1991); but cf. Peter A. Alces, Rethinking Professor Westbrook's "Two Thoughts About Insider Preferences", 77 Minn.L.Rev. 605, 615 (1993) (noting that a judgment-worthy guarantor has greater incentive to prefer the holder of its guaranty than does a judgment-proof guarantor, and that, consequently, the lender's improper leverage may be enhanced where the guarantor is judgment-worthy).
 
 
 23
 Because we decline to depart from a literal reading of the Code, we need not crown a victor in the equity debate. For the same reason, we need not pass upon the relationship between the force of a debtor's leverage and the extent of his solvency.
 
 D.
 
 24
 Courts sympathetic to outside creditors in trilateral preference cases have devised "theories" to justify their rulings. The leading theory, the "two-transfers theory," is advanced by the Bank as an alternative to its plain language and legislative history arguments.
 
 
 25
 Under the two-transfers theory, a single payment by a debtor to an outside creditor is treated as two separate transfers for purposes of Sec. 547(b). See Goldberger v. Davis Jay Corregated Box Corp. (In re Mercon Indus., Inc.), 37 B.R. 549, 552 (Bankr.E.D.Pa.1984); see generally Brands, supra, at 534-535. The first transfer is from the debtor to the outside creditor in satisfaction of the underlying obligation; the second, from the debtor to the guarantor in satisfaction of the guarantor's contingent liability. In re Mercon, 37 B.R. at 552; In re T.B. Westex, 950 F.2d at 1193. Only the second transfer constitutes an avoidable preference. The first transfer is not a preference because it benefits only the outside creditor and therefore is not subject to the extended preference period. The trustee can recover the second transfer from the guarantor but not from the outside creditor, because the outside creditor is neither the "initial transferee" nor "an entity for whose benefit" that transfer was made. See 11 U.S.C. Sec. 550(a)(1).
 
 
 26
 Deprizio rejected the two-transfers theory on the ground that the theory improperly equates "transfer" with "benefit received," whereas the Code equates transfer with "payments made." 874 F.2d at 1195.
 
 
 27
 Sections 547 and 550 both speak of a transfer being avoided; avoidability is an attribute of the transfer rather than of the creditor. While the lenders want to define transfer from the recipients' perspectives, the Code consistently defines it from the debtor's. A single payment therefore is one "transfer", no matter how many persons gain thereby.
 
 
 28
 Id. at 1195-96. See also In re C-L Cartage, 899 F.2d at 1494-95 (quoting Deprizio, 874 F.2d at 1195-96, and rejecting the two-transfers theory); Brands, supra, at 540 (criticizing the two-transfers approach for "engag[ing] in a tortured construction of the statute...").
 
 
 29
 We agree with Deprizio. There was only one transfer.
 
 III.
 
 30
 The Bank reads Sec. 550(a), which permits recovery only "to the extent that a transfer is avoided under section ... 547," to mean that each element of Sec. 547 must be satisfied with respect to the party from whom recovery is sought under Sec. 550. The Bank asserts that because it is "specifically protected by section 547(b)(4)(A) from the avoidability of the [p]ayment, the Bank is also protected by section 550 from the recoverability of the Payment."
 
 
 31
 Deprizio rejected this argument, holding that "avoidability is an attribute of the transfer rather than of the creditor." 874 F.2d at 1195. The "to the extent that" language simply recognizes that transfers sometimes may be avoided only in part, and that only the avoided portion of a transfer is recoverable. Id. at 1196.
 
 
 32
 We agree. Although the Bank is not completely clear on the basis for its argument that it is "protected ... from the avoidability of the [p]ayment," we are certain that it needs no such protection, for it is the transfer, not the Bank, that is avoided. The Bank seeks relief from liability ("recoverability") that is not afforded it by Sec. 550(a), the controlling section.[5]
 
 A.
 
 33
 The Bank contends that the legislative history of Sec. 550 suggests that a preference cannot be recovered from a "protected transferee." The Bank quotes from the Report of the Commission on Bankruptcy Laws of the United States, H.R.Doc. No. 137, 93d Cong., 1st Sess. (1973), and cites the statements of two legislators in support of its position. The legislative history cited by the Bank does not support its contention. The Commission Report expressly notes that under its proposed section 4-609(a)--the precursor to Sec. 550--, recoverable property is recoverable from "all initial transferees ..., not just those preferred." Report pt. II at 180, reprinted in Collier on Bankruptcy, App. 2 (15th ed. 1993). The statements made by Representative Edwards and Senator DeConcini and cited by the Bank are not supportive. The quoted portion of the legislators' statements refers only to fraudulent transfers and the availability of a good-faith defense to the transferee thereof. 124 Cong.Rec. 32,400 (1978) (statement of Rep. Edwards), reprinted in 1978 U.S.C.C.A.N. 6436, 6457; 124 Cong.Rec. 28,260 (1978) (statement of Sen. DeConcini), reprinted in 1978 U.S.C.C.A.N. 6505, 6527. Moreover, when the relevant paragraph is read in its entirety,[6] the statements undermine the Bank's position. See Issac Nutovic, The Bankruptcy Preference Laws: Interpreting Code Sections 547(c)(2), 550(a)(1), and 546(a)(1), 41 Bus.Law. 175, 189 (1985).
 
 
 34
 As the Tenth Circuit noted in In re Robinson Bros.:
 
 
 35
 As hard as one searches, one is unable to uncover any material evidence in the Code or its legislative history that Congress intended paragraph 550(a)(1) to operate less than literally merely because of [sic] one of the potential defendants designated in that paragraph supplies the factual predicate for avoiding a transfer. In fact, in the original bills approved by the Senate and the House of Representatives, each version of Section 550 mandated recovery from the 'initial transferee.'
 
 
 36
 892 F.2d 850; 97 B.R. at 80 n. 1 (quoting Thomas E. Pitts, Jr., Insider Guaranties and the Law of Preferences, 55 Am.Bankr.L.J. 343, 347 (1981)).
 
 B.
 
 37
 The Bank next argues that where alternative interpretations of a Code section render the Code ambiguous and legislative history is not definitive, the Code should be interpreted in accordance with pre-Code practice. The Bank cites Dewsnup v. Timm, --- U.S. ----, ----, 112 S.Ct. 773, 779, 116 L.Ed.2d 903 (1992), in support of its argument. Dewsnup, however, does not require the result urged by the Bank.
 
 
 38
 The Bank ignores a holding of the Dewsnup Court: "where the language is unambiguous, silence in the legislative history cannot be controlling." Id. Section 550 is unambiguous: recovery is permitted from any initial transferee. But see Donald W. Baker, Repayments of Loans Guaranteed by Insiders as Avoidable Preferences in Bankruptcy: Deprizio and Its Aftermath, 23 U.C.C.L.J. 115126 (1990) (arguing that the phrase "to the extent that" is ambiguous); cf. James A. Rodenberg, Indirect Preferences: Recovery Under Sections 547 and 550 of the Bankruptcy Code, 55 Mo.L.Rev. 327, 343 (1991) (arguing that a literal interpretation of the Code could restrict a trustee to a ninety-day preference recovery period, even where there is an insider guarantor). Even if Sec. 550 represents a substantial change from pre-Code practice, we must give effect to that change. "[W]here, as here, the statute's language is plain, 'the sole function of the courts is to enforce it according to its terms.' " United States v. Ron Pair Enters., Inc., 489 U.S. 235, 241, 109 S.Ct. 1026, 1030, 103 L.Ed.2d 290 (1989) (quoting Caminetti v. United States, 242 U.S. 470, 485, 37 S.Ct. 192, 194, 61 L.Ed. 442 (1917)); cf. Deprizio, 874 F.2d at 1196-97 (arguing that by providing in Sec. 550 for recovery from either the transferee or the beneficiary, Congress effected such a "wholesale change[ ]" in the law that pre-Code practice is unhelpful in interpreting Secs. 547 and 550).
 
 C.
 
 39
 The Bank argues that the effect of the "Deprizio rule" will be to increase the probability that insider guarantors will cause debtors to "prefer" the holder of the guaranty. It reasons that in order to maneuver around Deprizio and as a condition to the extension of credit, lenders will compel guarantors to waive their rights of reimbursement or indemnification from the debtor. Deprizio arguably is inapplicable in such circumstances because the insider is no longer a "creditor."[7] The Bank argues that an insider who has executed such a waiver will be even more likely to exhort the debtors to prefer the outside creditor.
 
 
 40
 The Bank technically may be correct, but it overstates the magnitude of the problem. The fact is that "[t]he insider's right of action against the [debtor] company is likely to be virtually worthless in the only situation--default--in which it matters." Westbrook, supra, at 87-88. Accord Mark E. Toth, Comment, The Impossible State of Preference Law Under the Bankruptcy Code: Levit v. Ingersoll Rand and the Problem of Insider-Guaranteed Debt, 1990 Wis.L.Rev. 1155, 1169 ("[t]he only benefit surrendered by such a waiver would be the inside guarantor's right to be subrogated to the outside creditor's largely worthless claim to a deficiency judgment against the [bankrupt] debtor corporation.").
 
 
 41
 Because an insider gives up something of little or no practical value when he executes a waiver, he is only very slightly, if at all, more likely to cause a preferential payment.
 
 
 42
 The Bank also asserts that the effect of the Deprizio rule is to punish the "innocent" debtor. It reasons that if lenders are liable for preferential transfers made within one year of bankruptcy, those lenders will have a strong incentive not to seek guaranties, and that, consequently, credit will become both scarce and dear. This logic ignores both the ability of the creditor to compel the guarantor to waive his subrogation rights and the guarantor's likely amenability to such an arrangement.
 
 IV.
 A.
 
 43
 The First Circuit confronted the trilateral preference problem in Travelers Ins. Co. v. Cambridge Meridian Group, Inc. (In re Erin Food Servs., Inc.), 980 F.2d 792, 797 (1st Cir.1992). The court discussed the Deprizio decision but refused to "revisit the underlying issue...." Id. at 798. Instead, the court assumed that Deprizio analyzed the Code provisions correctly and proceeded to determine whether the insider guarantor "benefited" from the transfer. See id. at 799.
 
 
 44
 The court first considered the trustee's argument that the guarantor received an unquantifiable benefit by virtue of the fact that the payment to the outside lender forestalled temporarily the commencement of bankruptcy proceedings against the debtor. The court rejected the trustee's argument, holding that the term "benefit" in Sec. 547(b)(1) "is confined, as in Deprizio and every other trilateral preference case ... to transfers ... which are shown to have resulted in a quantifiable monetary reduction in the insider-creditor's contingent claim...." Id. at 801.
 
 
 45
 Erin then considered whether the guarantor received a "quantifiable" benefit:
 
 
 46
 Since the non-insider creditor in a trilateral preference receives direct payment on its antecedent debt, the insider guarantor will realize a corresponding dollar-for-dollar reduction in the amount of his contingent liability on the guarantee, ... except in cases like the present where the insider has guaranteed less than the full amount of the primary debt, or where the primary debt is fully secured by the property of the debtor at the time of the challenged transfer.
 
 Id. (citation omitted).[8]
 
 47
 The insider had guaranteed a debt of approximately $61.7 million and had secured his nonrecourse guaranty with collateral worth $19.35 million. The challenged transfer was a payment of $2.08 million on the outstanding obligation, and the transfer was made at a time when the outstanding loan balance was well in excess of the $19.35 million pledged to secure the guaranty. See id. at 802. The court reasoned: (1) that the guarantor's exposure was the same ($19.35 million) after the transfer as it was before the transfer; (2) that therefore the guarantor did not benefit from the transfer, id. at 802-03; accord BMC Am., Inc. v. Sequa Corp. (In re Cannon Ball Indus., Inc.), 155 B.R. 177 (N.D.Ill.1993); and (3) that "a fortiori " the transfer did not enable the insider to receive more than he would have under a Chapter 7 liquidation. Erin, 980 F.2d at 802.
 
 B.
 
 48
 We address a variation of the other so-called "exception" identified--though not confronted--by the Erin court. Sufolla's payment to the Bank was made sometime between June 9, 1987, and August 26, 1987. The Bank did not become undersecured until December 1, 1987. We must decide therefore whether the guarantors benefited from a payment made to the Bank, which at the time of the transfer was fully secured but which was undersecured at the time of the bankruptcy petition, and whether the transfer enabled the insiders to fare better than they would have in a Chapter 7 liquidation. 11 U.S.C. Sec. 547(b)(1), (5).[9]
 
 
 49
 In Miller v. Rausch-Alan, Inc. (In re Gamest, Inc.), 129 B.R. 179 (Bankr.D.Minn.1991), the bankruptcy court held that a debtor's prepetition payments to a fully secured creditor did not benefit the insiders who had guaranteed the debtor's obligation to the creditor because the insiders, if called upon to satisfy the obligation, would be subrogated to a fully secured claim. Id. at 182. By identical reasoning, the court held that the guarantors did not "receive more" by virtue of the payment to the outside creditor than they would have received in a Chapter 7 liquidation, and that therefore Sec. 547(b)(5) was not satisfied. Id. at 182-83.
 
 
 50
 We do not quarrel today with the reasoning of Gamest. Nor do we contest the dicta in Erin (and the Deprizio dicta cited by the Erin dicta), to the extent it is read to apply to the factual scenario presented in Gamest. We confront a situation subtly, though significantly, different.
 
 
 51
 Although the Bank was fully secured at the time of Sufolla's payment, it was only partially secured on the date of the bankruptcy petition. In a hypothetical liquidation, which is constructed as of the date of petition, see Neuger v. United States (In re Tenna Corp.), 801 F.2d 819 (6th Cir.1986), the Bank's claim would be bifurcated into a secured claim and an unsecured claim. 11 U.S.C. Sec. 506(a). Had the payment to the Bank not been made and had the Bank received payment instead from the guarantors, the guarantors would have been subrogated to the Bank's bifurcated claim. See 11 U.S.C. Sec. 509(a); Gamest, 129 B.R. at 182. The guarantors would have been paid in full on the secured claim, but likely would have received only a few cents on the dollar for the allowed unsecured claim.
 
 
 52
 The transfer to the Bank decreased the amount of the indebtedness, which in turn increased the extent to which the collateral could satisfy the obligation. Once the value of the collateral fell below the value of the outstanding obligation, the reduction in the obligation, which was caused by the transfer, resulted in an increase in the amount of the insider's potential secured claim and a decrease in its potential unsecured claim. Thus, the insider guarantors fared better as a result of the payment than they would have in a hypothetical liquidation. See 11 U.S.C. Sec. 547(b)(5); In re C-L Cartage, 899 F.2d at 1493 (noting that Sec. 547(b)(5) is satisfied where the insider is an unsecured creditor even though the outside creditor is fully secured).
 
 
 53
 We also are satisfied that the insider guarantors "benefited" within the meaning of Sec. 547(b)(1). The payment to the Bank not only immediately "mathematically reduced the likelihood that the insiders would be called upon to fulfill their guarantee," see Cannon Ball Indus., Inc. v. Sequa Corp. (In re Cannon Ball Indus., Inc.), 150 B.R. 929, 931 (Bankr.N.D.Ill.1992), rev'd, In re Cannon Ball Indus., Inc., 155 B.R. 177, 180, but it also reduced the insiders' actual exposure.[10]
 
 
 54
 Our conclusion is consistent with the bankruptcy court's analysis in Gamest. In holding that there was no benefit to the guarantors and that Sec. 547(b)(5) was not satisfied, Gamest stated:
 
 
 55
 "Section 547 does not define what sort of 'benefit' needs to be received by a creditor to trigger preference liability. If the insider is only a guarantor of a fully secured loan, it is difficult to see how the insider has economically benefited from the payment to the lender. Technically, the guarantor has 'benefited' via a reduction in his exposure on the guarantee. From a practical standpoint there is no benefit because the insider ultimately should have no exposure on the guarantee, assuming that the collateral still exists and does not decline in value."
 
 
 56
 Gamest, 129 B.R. at 181-82 (emphasis added) (quoting Brad R. Godshall et al., Two Years Later: Eight Questions Left Unanswered (or Extremely Confused) by Deprizio, 19 Cal.Bankr.J. 41, 61 (1991)). Gamest assumed that the outside creditor remained oversecured on the date of petition. In contrast, the Bank indisputably was undersecured on bankruptcy day.
 
 C.
 
 57
 The Bank asserts that the guarantors did not benefit even if there was an actual reduction in their exposure because the guarantors were at all relevant times insolvent. In essence, the Bank argues that a reduction in the liabilities of an insolvent entity does not benefit that entity, provided that it remains insolvent immediately after the reduction. We disagree. Insolvency is transitory, or at least not inherently permanent. A decrease in the degree of insolvency, like an increase in the degree of solvency, is beneficial.
 
 
 58
 A different conclusion might obtain where a guarantor previously has been discharged from liability on the guaranty through a personal bankruptcy proceeding, see Levit v. Ingersoll Rand Fin. Corp. (In re V.N. Deprizio), 86 B.R. 545, 553 (N.D.Ill.1988), aff'd in part, rev'd in part, Deprizio, 874 F.2d at 1186, but we have no occasion to decide that issue today.
 
 V.
 
 59
 We hold that a lender who holds the guaranty of an insider of a debtor company is subject to the year-long preference recovery period of 11 U.S.C. Sec. 547(b)(4)(B), rather than the ninety-day period specified in Sec. 547(b)(4)(A). Whether a waiver of the guarantor's rights against the debtor suffices to circumvent this rule is a question we leave for another panel and another day.
 
 
 60
 U.S. National Bank of Oregon saw fit to lend Sufolla, Inc. a substantial amount of money on the strength of certain collateral and the personal guaranties of Sufolla insiders. The Bank received a preferential payment of $4,332.05 within one year of Sufolla's bankruptcy, a payment which benefited the insiders. The Bank must now return the payment and seek its due from the collateral and the guarantors, the precise recourse for which the Bank initially bargained.
 
 
 61
 AFFIRMED.
 
 
 
 [1]
 Although the Bankruptcy Code contains no explicit authorization for the initiation of an adversary proceeding by a creditors' committee, a qualified implied authorization exists under 11 U.S.C. Sec. 1103(c)(5). See In re First Capital Holdings Corp., 146 B.R. 7, 11 (Bankr.C.D.Cal.1992)
 
 
 [2]
 The Official Unsecured Creditors Committee did not file a brief on appeal and did not participate in oral argument. The American Bankers Association filed a brief as amicus curiae on behalf of the Bank
 
 
 [3]
 Section 547(b) provides in relevant part:
 [T]he trustee may avoid any transfer of an interest of the debtor in property--
 (1) to or for the benefit of a creditor;
 (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
 (3) made while the debtor was insolvent;
 (4) made--
 (A) on or within 90 days before the date of the filing of the petition; or
 (B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and
 (5) that enables such creditor to receive more than such creditor would receive if--
 (A) the case were a case under Chapter 7 of this title;
 (B) the transfer had not been made; and
 (C) such creditor received payment of such debt to the extent provided by the provisions of this title.
 11 U.S.C. Sec. 547(b) (1988).
 
 
 [4]
 Section 550(a) provides in relevant part:
 Except as otherwise provided in this section, to the extent that a transfer is avoided under section 544, 545, 547, 548, 549, 553(b), or 724(a) of this title, the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from--
 (1) the initial transferee of such transfer or the entity for whose benefit such transfer was made....
 11 U.S.C. Sec. 550(a) (1988).
 
 
 [5]
 The Bank's "plain language" argument is a species of the "statutory construction" approach adopted by the district court in In re Midwestern Cos., 102 B.R. at 173. Both incorrectly conceive of avoidability as a characteristic of the transferee. Compare the Bank's plea for protection from avoidability with id. (stating that Sec. 547 distinguishes between insiders and non-insiders). Section 547 does not distinguish between insiders and non-insiders; it distinguishes between avoidable and non-avoidable transfers
 
 
 [6]
 The paragraph provides:
 Section 550(a)(1) of the House amendment has been modified in order to permit recovery from an entity for whose benefit an avoided transfer is made in addition to a recovery from the initial transferee of the transfer. Section 550(c) would still apply, and the trustee is entitled only to a single satisfaction. The liability of a transferee under section 550(a) applies only "to the extent that a transfer is avoided". This means that liability is not imposed on a transferee to the extent that a transferee is protected under a provision such as section 548(c) which grants a good faith transferee for value of a transfer that is avoided only as a fraudulent transfer, a lien on the property transferred to the extent of value given.
 1978 U.S.C.C.A.N. at 6527 (Rep. Edwards) (emphasis added); id. at 6527 (Sen. DeConcini).
 
 
 [7]
 This reasoning emanates from the Deprizio "tax holding." In addition to guaranteeing the debtor's obligation to the outside creditor, the guarantors in Deprizio were liable by operation of law to the Internal Revenue Service for certain of the debtor's tax payments. The Seventh Circuit held that the IRS was not subject to the extended preference recovery period because the insiders were not "creditors" of the debtor corporation with respect to these payments. Deprizio, 874 F.2d at 1191-92. The court reasoned that the insiders were not creditors because they had no claims, contingent or otherwise, for reimbursement or indemnification from the debtor. Id. Relying on this aspect of Deprizio, lenders now routinely seek and obtain waivers from insider guarantors. See Baker, supra, at 145. The Fifth Circuit recently adopted the tax aspect of Deprizio when it refused to allow preference recovery against an outside creditor where the insider had no contingent claim against the debtor in connection with the debt to the outside creditor. See In re Southmark Corp., 993 F.2d at 121. In contrast to the situation presented in In re Southmark Corp., the payment by Sufolla to the Bank benefited the insiders, if at all, as creditors, because the insiders' contingent claims against Sufolla were connected directly to the debt owed to the Bank
 
 
 [8]
 As support for its dictum that an insider guarantor receives no benefit where the primary obligation is fully secured at the time of the challenged transfer, the First Circuit cited dicta in Deprizio, 874 F.2d at 1199-1200. Erin, 980 F.2d at 801 n. 15
 
 
 [9]
 We assume from the Erin dicta that were it faced squarely with this question, the First Circuit would find no benefit under the circumstances of this case. We proceed therefore cautiously, though intrepidly
 
 
 [10]
 In Erin, there was no actual reduction in the insider's exposure because of the ceiling effect associated with the nonrecourse nature of the guaranty. See Erin, 980 F.2d at 801 n. 14 & 802 n. 18. The guarantor in Erin was "exposed" at all relevant times to the full extent of the value of the collateral he pledged to secure the guaranty. Moreover, no evidence was presented to suggest that the value of the pledged collateral fluctuated. Id. at 802 n. 17